Ruffin, C. J.
 

 If this case be 'considered Upon its merits, as disclosed in the affidavits, which taken altogether, explain the case fully, the Court would be little inclined to help the applicant, unless compelled by clear and strict law. There is no doubt, that every Court múst have power to control its officers by process of contempt, attachment, fine, and commitment. It is the peculiar duty of a Court to the' public and to every suit- or, to prevent the officers of the Court from misbehavior in office, to the prejudice of the citizen, the scandal of the administration of justice, and detracting from the character of the Court. Attorneys of a court, Clerks, Sheriffs, and all officers, having the returns of process to the Court and the custody of prisoners under mesne or final process of the Court, must, of necessity, be thus amenable to the summary control and punishment of the court; else, the administration of the law would fail altogether at the option of subordinate ministerial officers, often not actuated by the best motives, nor very capable judges of what is proper. The conduct of this person was such as to call for severe animadversion from the Court. It was iniu-
 
 *152
 
 rious to the suitor, disrespectful and insolent, personally, to the gentlemen on the bench, and grossly contemptuous to the Court in its judicial capacity. It is true, indeed, that the act, Rev. St. c. 48, s. 7, allows until the second day of the term to return the
 
 ca. sa.
 
 and bond. It says, “ it shall be the duty of all officers to return
 
 on or before
 
 the second day of the court.” But that only means, that he may postpone his return to the second day, unless required by the proper authority to make it earlier. He may make it on the first day, and, for sufficient reasons, the court may require him to make his return on that day. And there is no doubt, that if a rule had been formally drawn up and served on this person, requiring him to shew cause why he should not make a return immediately, and he had failed to appear, that an attachment or commitment would have been as regular a sentence as any court of justice could have passed. So far, then, as the court has any discretion to grant or withhold this extraordinary remedy by
 
 certiorari,
 
 it would be but leaving the party to the just consequence of his folly and default by refusing the writ. For, as we are now considering the case, although the party was not formally laid under a rule duly entered, yet substantially, and for all the purposes of answering this application, he must be regarded as having a full opportunity of shewing cause, and that he refused through contumacy. But had there been no legal default, and admitting that this person might have insisted before the court on the delay of the return to the next day as his absolute right, yet the message to the court, in its terms and manner, and while he was within the verge of the court, was as offensive and disrespectful, as it could be, and in itself justified the fine.
 

 But, in truth, this is not, we think,
 
 the
 
 proper method of contesting the propriety or lawfulness of this order, if there be any such method. From the very nature of contempts, and in order that the punishment may be efficacious, the punishment must be immediate and peremptory, and not subject to suspension by appeal at the mere will of the offender, nor by any proceeding in the nature of an appeal. Suppose one to come
 
 *153
 
 into court and curse and abuse the judge on the bench ? Or, suppose a sheriff, with a writ in his hand, in the presence of the court positively refuses to return it, so that the party’s action will be discontinued ? What would sentences for these contempts be worth, if the culprit could supercede them by appeal,
 
 certiorari,
 
 or writ of errors '? Manifestly, nothing: and the authority of the court would really be contemptible, if it could be thus eluded and prostrated. There is no instance, therefore, of the re-examination of an order;-committing or fining a person for a contempt, with the view of hearing the evidence, and trying the question
 
 de
 
 novó, nor directly to reverse or quash an order of commitment, or imposing a fine for an intrinsic insufficiency. If there be such insufficiency upon the face of the order, the party has his remedy by
 
 habeas corpus,
 
 and by action against those who act on the order,* either against his person or property.
 

 We own, however, that we cannot hold out to this person much hope of redress in that way. It does hot seem to us at present, that this, order can be impeached. It was indeed suggested, that it might, because it does not sufficiently set out the facts on which the contempt arose; and it was supposed that an order is void, in which a case of contempt is not made out by a statement of proper facts, and finding of the contempt by the court upon those facts. .But we do not hold such to be' the law. . The question has often arisen in England, and' recently it has undergone in that country very elaborate, anxious, and learned discussion both in Parliament and in the courts; and it is now given up, that the facts constituting the alleged contempt need not be stated. If, indeed, they be stated and be insufficient, that is, are such as manifestly cannot amount to a contempt, it seems properly, agreed,-that it must be disregarded, and the party discharged from an unlawful imprisonment, as in
 
 Bushell's case,
 
 Vaugh. 135, where'he was committed “ for giving a verdict against full and clear evidence.” Therefore, it befits every court, which has a proper tenderness for the rights of the citizen and a due respect
 
 *154
 
 to its own character, to state the facts explicitly, not suppres-those on which the person might be entitled to be discharged, more than it would insert others, which did not exist, for the sake of justifying the commitment. A court, which knows its duty, and is not conscious of violating it, will ever be desirous of putting upon the record, or in its process, the truth of the case, especially as thereby a higher court may be able to enlarge a citizen illegally committed or fined. But if the commitment or fine be in a general form for a contempt, all other courts are bound by it, and the party can only free himself, by urging the contempt before the court that has adjudged it. It is so laid down by Lord Ellenborough, in
 
 Burdett
 
 v. Abbot, 14 East. 1, and by Justice Bayley. That case went to the House of Lords, 5 Dow. 199, and in reply to the question, whether, if the Courfrof Common Pleas had adjudged an act to be a contempt of court, and committed for it, stating the adjudication generally, the Court of King’s Bench, on a
 
 habeas Corpus
 
 setting forth the warrant, would discharge the prisoner because the facts and circumstances of the contempt were not stated, all the judges replied in the negative ; and, in consequence of it, the judgment was affirmed unanimously. It is true, that case was upon a commitment by the House of Commons; but it was sustained expressly because it would have been valid, if done by a court of record. The subject has since been most diligently considered and learnedly argued in the case of Hobhouse, 3 B. & Ald. 420, in the cases which grew out of the recent contest between the Courts and the House of Commons, of
 
 Stockdale
 
 v.
 
 Hansard,
 
 9 Adol. & El. 1, and
 
 The case of the Sheriff of Middlesex,
 
 11 Adol. & El. 273; and all the judges say, in a distinct manner, that if a warrant merely state a contempt in general terms, it is conclusive, and that another court cannot go into the question of contempt on affidavit, nor discuss the motives which may be alleged for suppressing the facts. If then a court has competent authority to adjudge a contempt, the adjudication stands of itself, and the grounds of it need
 
 *155
 
 not be stated, though certainly, in fairness,'and to prevent the imprisonment of a citizen, it may be, upon an unjust or frivo-Ions pretence, the court ought to state them.
 

 In the case before us, the order is loosely expressed, but is, we think, sufficient. If the failing to return the execution be the ground of the alleged contempt, it is not an absurd or inadequate ground. A contempt may be .committed by such an omission or refusal, and we do not see the particulars on • the order to show that it was not in fact a contempt. But if that is not to be taken as the ground of the adjudication, because it is not shown how it became a contempt, then there is no ground stated, but merely the contempt in general terms is found, and that binds. In every point of view, therefore, the decision in the Superior Court was right, and must bé affirmed.
 

 PkR Cueiam, Judgment affirmed.