DUNCAN CROMARTIE v. COMMISSIONERS OF BLADEN.

*Contempt — Appeal — County Indebtedness — Taxation — Mandamus.*

1. Where, at the instance of a party litigant, judgment of imprisonment is rendered against the adverse party for a contempt in wilfully disobeying an order of court, the party aggrieved is entitled to an appeal.

2. Under the act of 1868–'69, ch. 177, the court has no power to *punish* a contempt already committed by an imprisonment of indefinite duration ; but it may, by "proceedings *as* for contempt," coerce obedience to any lawful order, by imprisoning the contumacious party until he shall comply.

3. Upon the principle that private interests must yield to those of the public, if the entire fund which can be raised by taxation within constitutional limits is required to meet the necessary expenses of an economical administration of the county government, a statement of such facts, supported by proof, will be a due return to a peremptory mandamus directing the county commissioners to levy and collect a sufficient tax to satisfy a judgment in favor of an individual creditor.

(*Bond* v. *Bond*, 69 N. C., 97 ; *In re Walker*, 82 N. C., 95 ; *In re Daves*, 81 N. C., 72 ; *State* v. *Mott*, 4 Jones, 449 ; *Pain* v. *Pain*, 80 N. C., 322 ; *Johnston* v. *Comr's*, 67 N. C., 101 ; *Clegg* v. *S. S. Co.*, 66 N. C., 391, cited and approved.)

RULE upon the defendant commissioners to show cause why they should not be attached for contempt, heard at Spring Term, 1881, of BLADEN Superior Court, before *Gudger, J.*

The defendants appealed from the ruling below.

*Messrs. W. A. Guthrie* and *T. H. Sutton,* for plaintiff.
*Messrs. D. J. Devane* and *C. C. Lyon,* for defendants.

SMITH, C. J. The plaintiff having sued, and at spring term, 1875, recovered judgment against the board of county commissioners of Bladen for the sum of $4,760, with interest thereon from February 5th preceding, to enforce the pay-

ment thereof applied for and obtained a writ of *mandamus* commanding the commissioners, as soon as permitted by law, to levy and collect a sufficient tax to discharge the debt. The process issued on December 25th, 1879, and was returnable and returned to spring term following. To this mandate the commissioners answered that they were only authorized by law, with a concurrence of a majority of the justices of the peace sitting with them, to levy taxes on the first Monday in August, and had been unable to comply with the directions of the writ since it was issued. At fall term, 1880, they made further answer and say that they have levied the maximum tax allowed under the constitution upon the taxable property in the county, from which would be realized about $4,000, according to their estimates, all of which was needed to meet the ordinary expenses of the county government for the current fiscal year, and necessary reparation of the public buildings and bridges.

At spring term, 1881, a rule, supported by affidavits of the plaintiff and others, was granted by the presiding judge against the commissioners personally, requiring them to appear before him *instanter*, and show cause, if any they have, why an attachment should not issue against them for contempt in failing to obey the command of the writ, to which rule the chairman of the board, W. J. Parker, on behalf of himself and associates, responds and says:

The commissioners did on August 1st, 1880, levy a tax on the real and personal estate in their county subject to taxation, to the full limits allowed by law, to-wit, for school purposes $8\frac{1}{3}$ cents and for county expenses $34\frac{1}{3}$ cents on every one hundred dollars valuation, and $1.28 upon each taxable poll for the school and pauper fund. The nett amount expected to be raised from the assessment upon property will be $4,630.38, whereof has been already disbursed by the treasurer $532.76, and $2,472.55 remains in the collector's hands.

CROMARTIE v. COMMISSIONERS.

The expenses to be provided for during the year out of this fund are:

For costs incurred upon *nol. pros.* docket of fall
    term, 1880,...........................................$  200
  "   "   of holding the present term of the court,... 1,200
  "   "   mileage and per diem of the commissioners,  300
  "   "   payment of fees due the clerk,................  300
  "   "   estimated jail charges $250, necessary re-
      pairs $300, and cost of providing an
      iron cage therein $1,200,.................. 1,750
  "   "   repairs of court house $400, and of
      bridges $200,.................................  600
  "   "   other unascertained costs for taking tax
      list and holding August election, esti-
      mated at ........................................  300

      Making in the aggregate,...............$ 4,650

The fund in the treasury on March 1st, 1881, was for gen-eral purposes $1,625.11, and not the larger sum stated in the plaintiff's affidavit.

Upon the coming in of this response, without inquiry or reference to ascertain the correctness of its specifications or the necessity and reasonable cost of the expenditures for the proposed objects, so far as we can see from the record, his Honor finds as a fact that no steps had hitherto been taken towards the reparation of the public buildings and bridges, and that all accruing demands on the treasury to that date had been met, except the expenses of the pending term and the *nol. pros.* docket and the sum of $75 to be paid under a contract for a bridge, that the available county means in possession of the treasurer were for public schools derived from the property tax, $2,033.47; and the poor from the poll tax, $236.86; general county purposes, $1,625.11; and to be.

collected and paid in by the sheriff for the same objects, to-wit, public schools, $662.95; poll tax, $827.45; general county fund, $2,472.45. And the court thereupon made the rule absolute and adjudged that the several defendants be each committed to the custody of the sheriff and be by him imprisoned in the common jail until they pay to the plaintiff out of the general fund in the county treasury the sum of $1,000, and deliver to him an order on the sheriff for a further like sum to be paid out of the taxes which have or may come into his hands, and that an alias writ of mandamus issue returnable to the next term, commanding the commissioners to levy and collect a sufficient tax to pay the residue of the plaintiff's demand.

From this judgment the defendants appeal, and the plaintiff objecting to the appeal in the court below insists it cannot be entertained here.

1. The judgment of imprisonment of the defendants for the alleged disobedience of the mandate of the court and for the enforcement of its order, made in a pending proceeding between parties, and affecting a substantial right, is clearly the subject matter of appeal. An appeal under similar circumstances was upheld in *Bond* v. *Bond*, 69 N. C., 97; *In re Walker*, 82 N. C., 95, and *In re Daves*, 81 N. C., 72.

In the last case in meeting the objection that an appeal does not lie from a judgment punishing a party for contempt, it is said, " this is true as to that class of contempts which are committed in the presence of the court or so near as to interfere with its business, and the reasons for which are set out by NASH, C. J., in the opinion in *State* v. *Mott*, 4 Jones, 449. But in cases like the present, where the right to punish depends upon a wilful disobedience of any process or order lawfully issued, the lawfulness of the power exercised is a proper subject of review in this court."

2. The defendants contend that the imprisonment being indefinite in duration is in contravention of the act regula-

ting contempts, the second section of which prescribes the only punishments to be imposed and limits the extent of the fine and imprisonment. Bat. Rev. ch. 24.

An examination of the enactment, with its divisions in full as published in the acts of 1868-'69 ch. 177, renders its proper construction plain and the intent of the general assembly in passing it, manifest. The first section declares what acts and omissions are contempts for which the guilty party may be punished. In these cases the judgment is punitory for offences already committed, and its object the vindication of the rightful authority of the court and its protection in the exercise of judicial functions. The punishment which may be imposed is restricted to a fine not in excess of $250, and imprisonment for not more than thirty days, one or both, at the discretion of the court. The four next sections are entitled " Proceedings in contempt," and regulate the manner of exercising the power before conferred. The remaining sections have a different caption and are designated " Proceedings *as for contempt to enforce* civil remedies." It is there declared that " every court of record shall have power to punish as for contempt " in certain enumerated cases mentioned in the first six paragraphs of section seven and those in paragraph seven, in " all other cases where attachments and proceedings as for contempt *have been heretofore adopted and practiced in courts of record in this State to enforce the civil remedies or protect the rights of any party to an action."*

It will be noticed that throughout these latter portions of the statute, the proceeding is designated not as the former, but a proceeding " *as for contempt,"* and while regulating, not intended to deprive the court of its well established jurisdiction to enforce obedience to its lawful orders as before possessed and exercised.

" Without the ability to compel obedience to its mandates," say the court in *Pain* v. *Pain,* 80 N. C., 322, " whether

the order be to surrender writings in possession of a party, to execute deeds of conveyance, *to pay money*, as in the present case, or to perform any other act the court is competent to require to be done, many of its most useful and important functions would be paralyzed." The order here is coercive only upon persons capable of performing its requirement and its force is exhausted by rendering obedience. There is therefore no excess of power apparent in the judgment.

3. The findings of fact are however so imperfect that we are unable to decide the case upon its merits. It is manifest that where the public interests conflict with private interests, the latter must yield. If the entire fund which can be raised by taxation is required to meet the necessary expenses of an economical administration of the county government, and none can be diverted to pay its indebtedness without serious detriment to the public, none ought to be thus appropriated. This is the statement in the answer of the defendants showing cause against the rule, and if true, would seem to be a sufficient defence. The commissioners are under an official obligation to keep and maintain the public buildings and bridges, falling under their supervision, in good repair and safe condition, and to provide for the other specified public objects. But these must be reasonable estimates, and the necessity for the expenditure, present and pressing. If by any economic and prudent administration a part of the fund can be spared for the county indebtedness, undoubtedly the creditor has a right to demand that it be appropriated to his judgment. But this does not appear in the findings of fact by his Honor, nor does it seem that any inquiry in this direction was made by reference or the hearing of testimony. His decision seems to have been based upon the unexplained facts that the moneys had not been expended upon any of the specified objects up to that date, and the current demands upon the treasury

had been met, not adverting to the effect which the con-
tinued prosecution of the writ may have had upon the com-
missioners in preventing the use of the moneys until its de-
termination.    Until the suggested information is furnished
and the necessary additional facts found and supplied, we
are unable to decide whether the contempt has been com-
mitted or the coercing order *lawfully issued.* The commis-
sioners however can only be required to give an order upon
the treasurer when there are funds in his hands which
ought to be applied to the judgment, since this is the
method alone by which they can control and dispose of the
county moneys.    Bat. Rev. chs. 27, 29, 30 and ch. 102 §§ 40
and 41.

But for the insufficiency of the statement of facts upon
which the contempt is adjudged and our inability in conse-
quence to decide upon the validity of the order of commit-
ment and the correctness of the ruling, the cause must be
remanded.

We have expressed our opinion upon the several points
noticed as of practical importance and perhaps facilitating
the settlement of the present controversy.    The difficulties
arise out of the constitutional restrictions upon the taxing
power and the inadequacy often times of the county author-
ities to provide for all the public liabilities, superinducing
the frequent necessity of applying to the legislature for its
authoritative sanction for levying an increased tax for
special purposes beyond the constitutional limits.    Const.
Art. 5, §§ 1 and 7.    *Johnston* v. *Commissioners of Cleaveland,*
67 N. C., 101.

Before concluding this opinion we call attention to the
fact that the sheriff is no longer required to collect taxes,
under a judgment of the court to be applied to the debts of
counties or municipal corporations, except in three counties
and instead a special tax collector may be appointed to col-
lect the taxes thus assessed by these bodies.    Acts 1876-77,

ch. 257., The cause is remanded and this will be certified, *Clegg v. N. Y. W. S. Co.*, 66 N. C., 391.

Error.                                                    Remanded.