In the Matter of A. C. PATTERSON and W. H. DEAVER.

*Contempt—Punishment—Habeas Corpus.*

1. While a Court may by imprisonment, reasonable in its duration, compel obedience to any of its proper mandates, its power to *punish* for contempt in disregarding its orders is restricted to the penalties prescribed in § 649 of *The Code.*

2. Where an agent of another State, having the custody of an alleged fugitive under an extradition warrant, apprehending an attempt at rescue, had procured two citizens of this State to accompany him as protection against violence, and being served with a writ of *habeas corpus*, commanding him to take the prisoner before a Judge, refused to obey the writ and escaped with him from the jurisdiction of the Court, and there was no evidence that the persons acting as guards had actual custody of the prisoner, though they were present when the writ was read and knew its contents, nor that they aided or counseled the agent to resist or evade the process; *Held,* that the persons acting as such guard did not have the custody of the fugitive, and were not guilty of contempt for failure to surrender him to the officer charged with the execution of the writ.

3. It is the duty of the Judge, to whom an application for the writ of *habeas corpus* is made, to issue it, if the petition is made in conformity to the statute ; and it is likewise the duty of all persons to respect and obey it. If it has been obtained upon false statements, or by the suppression of facts which would prevent its issue, it will be dismissed upon the hearing. Until this is done every person who wilfully disobeys its commands or unlawfully resists or counsels resistance to its execution, is in contempt, and may be summarily punished therefor.

This was a RULE served upon the respondents to show cause why they should not be punished for contempt, heard before *Graves, J.*, at Spring Term, 1887, of BUNCOMBE Superior Court.

One Charles W. Goodlake was charged in the affidavit of J. E. Conner, a citizen of Tennessee and Sheriff of Hamilton County therein, with having made in that State an assault upon J. E. Burlington, with intent to commit murder, a crime punishable there by law with confinement in the State prison for a term not less than two years, and as a fugitive from justice, found in the County of Buncombe, was arrested under a warrant issued by A. T. Summey, a Justice of the Peace therein, and on December 24, 1886, committed ·to the custody of the Sheriff of Buncombe, to be held under the provisions of § 1165 of *The Code.* The prisoner, on the 6th day of January next ensuing, sued out a writ of *habeas corpus*, issued by Hon. James H. Merrimon, a Judge of the Superior Court, against the keeper of the common jail of Buncombe, wherein the prisoner was detained, requiring him immediately to produce his body and make return to the writ before Hon. A. C. Avery, Judge, at Morganton.

Upon the hearing, it was adjudged that the arrest and commitment were in accordance with law, and, as the agent commissioned by the Governor of Tennessee to demand and receive the prisoner for removal to that State was not present, that he be recommitted to the Sheriff, in whose custody he was, to await the action of the Governor of this State upon

the requisition of the Governor of Tennessee, if made within the time limited by law. A second application for the writ of *habeas corpus* was presented to the same Judge on the 19th day of February, 1887, in which, among other necessary averments, it was alleged that the prisoner had been surrendered to the agent of Tennessee, by virtue of an order so directing the Sheriff from the Governor of this State, for the purpose of removal, after which he had been suffered by said agent to go at large, and had been re-arrested and held by said Sheriff without further lawful authority. The writ was returned before Hon. J. C. MacRae, Judge, at Hendersonville, and he, overruling all the grounds upon which the claim to be discharged was based, recommitted the prisoner to the custody of the Sheriff, to be held under the orders before made.

Pending these proceedings, the said J. E. Conner was charged, upon the oath of the prisoner, with having committed perjury, in swearing out the warrant under which the original arrest was made, and he being carried before Charles W. Malone, another Justice of the Peace, for examination, on March 6, was discharged.

Again, for the third time, a similar writ was sued out upon a petition containing the required averments under section 1627, and among them, that the "illegality of the imprisonment in this behalf has not already been adjudicated upon by a prior writ of *habeas corpus*," before Hon. J. F. Graves, J., then at Marshall, in Madison county, returnable before himself *instanter*, directed to said J. E. Conner, who, at the time of making the affidavit, did not have the custody of the prisoner, and to whom the prisoner was not delivered until the next day, commanding the said Conner to bring the body of the prisoner before him at Marshall, with his return thereto The writ was awarded on March 6th, and at once placed in the hands of M. A. Chandley, Sheriff of Madison County, for service. On the night of that day the prisoner

was delivered to the agent, who, with several others accompanying him for the purpose of preventing an apprehended forcible attempt to rescue the prisoner, entered the cars at Asheville, and proceeded without interruption until the train reached the town of Marshall. There several persons, among them the Sheriff with the writ, attempted to enter the car where the prisoner was sitting by the side of one of the assistants, when the respondent Patterson forbade him, until he was told that the person was the Sheriff, and then made no resistance, and the Sheriff came in, and not finding the agent, Conner, read the writ in the hearing of the four assistants present, and demanded the body of said Goodlake, which, the Sheriff says in his return, was met with armed resistance. However, he subsequently found the agent in the apartment appropriated to the mails, and served the process on him, disregarding which mandate the agent proceeded on his way and conveyed the prisoner out of the State.

Thereupon an attachment was awarded against the said Patterson and others, to-wit: W. H. Deaver, J. D. Croft and T. J. Howard, the Judge finding that they had the custody of the prisoner and were in contempt, by virtue of which the said Chandley, Sheriff, arrested the said Patterson and Deaver, who alone were accessible to service, and brought them before the Judge to answer therefor.

The said Patterson made answer to the charge under oath, and in substance (for the answer is too extended to be reported in detail) disclaimed any intent to disobey the mandate of the Court, or obstruct the Sheriff in his efforts to serve it, and stated that his presence with the agent was only to aid the agent in resisting any lawless and forcible efforts that it was feared would be made to wrest the prisoner from his custody, and prevent his removal from the State; and that as soon as advised of the official character of the Sheriff, and the authority conferred upon him, no opposition of any kind was offered to its exercise, and that in all this he acted

simply in the protection of the agent against lawless violence, if attempted, to obstruct him in carrying out the order of the Governor of the State.

The Court refused the request made by respondents to have the matters of fact submitted to a jury. Respondents excepted.

The respondents offered to show, that the matters alleged in the petition for writ of *habeas corpus* had been theretofore adjudicated; that this writ ought not to have been issued. The Court held that the writ was issued upon the statements of the petition   Respondents excepted.

Thereupon a large number of witnesses were orally examined *pro* and *con.*

After hearing all the evidence and the argument of counsel, the Court announced its findings of fact, and pronounced judgment.

The facts found are as follows:

That there is a sufficient statement in the petition filed by Charles W. Goodlake to authorize and compel the Court to issue the writ of *habeas corpus.*

That Charles W. Goodlake had been imprisoned in the common jail of Buncombe County charged, upon a warrant issued by one A T. Summey, a Justice of the Peace of said county, with having committed an assault with intent to kill, in the State of Tennessee, and under that charge was held by the Sheriff of said County of Buncombe.

That a writ of *habeas corpus* had been heretofore sued out on the petition of the said Goodlake, and heard before A. C. Avery, one of the Judges of the Superior Court of the State, in which it was alleged that said Goodlake was in the custody of the Sheriff of Buncombe County, and upon the hearing, Goodlake had been remanded, to await the requisition of the Governor of Tennessee.

Another writ had been applied for and granted but had not been served, and no further action was taken under it.

Another writ had been applied for by Goodlake, alleging that he was detained by the Sheriff of Buncombe County, which was heard before J. C. MacRae, one of the Judges of the Superior Court of this State, and upon the hearing of that writ Goodlake was again remanded to the custody of the Sheriff of Buncombe County.

The fact that these proceedings had been had was not known to me at the time the writ was issued. The petition on which I granted the writ alleged that the petitioner was in the custody of one J. E. Conner.

J. E. Conner, representing himself to be the agent of the State of Tennessee, on Saturday, the 5th day of March, 1887, demanded Goodlake from the Sheriff of the county, and Goodlake, having obtained a pistol, resisted, and refused to allow Conner then to take him. A warrant, issued by a Justice of the Peace of the County of Buncombe, charging Conner with perjury. in suing out the warrant on which Goodlake was arrested, was then and there served on Conner, and the next day he had a hearing before the Justice of the Peace and was discharged.

There had been on Saturday night some disturbances about the jail, and a brother of Goodlake being near the jail about midnight, there being some twenty or thirty persons near him, said, " do not fear, Charlie," and added, " we will tear the jail down, if you say so."

The pistol was obtained from Charles W. Goodlake on Sunday.

One of the brothers of Goodlake tried to borrow a pistol.

There was some excitement in Asheville on Sunday evening about six o'clock. The Sheriff of Buncombe County again went to the jail to deliver Goodlake to Conner. Conner requested that the Sheriff of Buncombe County would deliver said Goodlake to him privately, and that the respondent A. C. Patterson should accompany him to the Tennessee line, to prevent a rescue, as he said.

Patterson is a Deputy of the Sheriff of Buncombe County, and the said Sheriff consented that he should accompany Conner, to assist him, to the Tennessee line.

The respondent W. H. Deaver was the Chief of the Pinion Detective Agency for Western Division of North Carolina, and Conner requested him to go with him to the Tennessee line, to prevent a rescue, as he said, and the Sheriff of Buncombe County also summoned him to assist in guarding Goodlake to the train and to the switch below the depot.

Conner and the Sheriff of Buncombe County and the respondents did have some apprehension that an attempt would be made to take Goodlake from the custody of Conner by force.

There was no real danger of such an attempt.

The respondents, at the request of Conner and Sheriff Worley, went to the jail and Goodlake was taken from the jail by the Sheriff of the County of Buncombe and placed in a covered vehicle, the respondents, with the Sheriff and some other deputies, got into the same vehicle and drove to a hotel near the railroad depot, and got out and went into the depot, and a few minutes later went into the first-class passenger car where Goodlake was formally delivered by Patterson, as Deputy Sheriff, to Conner, and at the request of the conductor, Conner, Goodlake, Patterson, Deaver, Croft and Howard went into the second-class passenger car, Goodlake being handcuffed.

When the train moved off, Conner, the respondents and T. J. Howard and T. D. Croft were in the second-class car without pistols upon their persons.

It was expected by Conner that an application for a writ of *habeas corpus* had been or would be made.

It was known to some of the deputies of Sheriff Worley who went to the depot, and to other parties, that a petition for a writ of *habeas corpus* had been sworn to in the jail Saturday night about midnight, but it was not communicated

by any one to Patterson and Deaver. Conner, soon after leaving the railway station at Asheville, claimed to be sick, and left the second-class car and was not seen in the car again; Howard, Croft and the respondents did remain in the second-class car with Goodlake in their custody.

When the railway train arrived at the station at Marshall, it first went on a side-track, where people do not usually get off, when the Sheriff of Madison County, with duplicate writs of *habeas corpus* issued by me, sought to enter the train. He was, at first, forbidden by the respondent Patterson, who did not know his official station, to enter, but as soon as he made his official character known, Patterson opened the door of the car and told him to come in. Conner was not then in that car. The Sheriff of Madison made known his business and exhibited his writs of *habeas corpus.* The respondent Deaver read the writ aloud, and the respondent Patterson said, "Read your writ, Sheriff, and that will tell you what to do." He had experience as a Deputy Sheriff, and said it must be served on Conner, to whom it was directed, and the respondent Deaver contended the same way. One of counsel for petitioner Goodlake said, "Howard is Conner's agent, and he is Conner," and after the writ had been read in Howard's hearing, the Sheriff handed to him the duplicate, which he would not take, and the Sheriff then put the duplicate in the lap of Howard. About that time the train moved off, with the Sheriff and his deputies still on the train. Search was made through the train for Conner and he could not be found.

The Sheriff then returned into the second-class car and told each of the respondents and Croft and Howard that he served the writ on each of them. The respondents replied, "He is not in our custody." The Sheriff responded, "Goodlake is here in handcuffs. He is in somebody's custody, and I serve this writ on each one of you."

As the train moved on, the Sheriff of Madison County,

with his assistants, continued the search for Conner, and finally 'he was found, disguised as a fireman in the mail car, covered over with mail bags, and the writ was served on him; and the Sheriff of Madison County handed to him the writ and petition on which it was issued, for him to read, expecting him to obey it. Conner took the writ and the petition and carried them off with him. This was in the State of North Carolina. The respondents were informed that the writ' had also been served on Conner, but with this information they, with the said Croft, Howard and Conner, went on, and carried the said Goodlake beyond the limits of this State, into the State of Tennessee.

The defendants now swear that they had no control over the said Goodlake, and that it is beyond their power now to produce him before the Court; and I find as a fact that the said Charles W. Goodlake is now out of their control, and that they cannot produce him.

I further find that at the time the writ of *habeas corpus* was served upon the respondents he was then in their custody.

I further find that the said respondents wilfully diregarded and disobeyed the said writ.

And I further find that the said respondents willfully assisted the said J. E. Conner in his attempt to evade the service of said writ.

It is considered by the Court, that when a petition for a writ of *habeas corpus* states matters of fact sufficient to authorize the Court to issue such writ, the Court cannot refuse to issue the writ, although facts subsequently developed may show that the statements in the petition are not true; and although one upon whom such writ is served may believe the writ was obtained upon a false statement in the petition, he cannot, for that reason, be excused for disobeying it.

It is further considered by the Court, that when a return is made and the body is not produced, except in case of the sickness of the person in whose behalf the petition is filed,

the Court will not inquire into the matter as to whether the capture and detention is lawful or not.

It is further considered by this Court, that when upon the return and the proofs to support it, that in fact the respondents cannot produce the body, because it is beyond their power and control, the Court will not imprison until the body is produced, because the Court will not require an impossible thing to be done.

It is further considered by the Court, that where the writ of *habeas corpus* has been duly served upon the respondents, as in this case, and at the time of such service, the petitioner, as in this case, Charles W. Goodlake, was in the actual custody of these respondents, they cannot be heard to say that the petitioner Goodlake was in the custody of a superior officer, when said superior officer, as in this case, J. E. Conner, was hiding and disguising himself, to evade the service of the writ, and thereby excuse themselves.

It is further considered by the Court, that these respondents have willfully disobeyed the writ of *habeas corpus* served upon them, while the petitioner Goodlake was in their custody, and thereby were guilty of a gross contempt of Court, and cannot now purge themselves by saying they did not intend the necessary consequences of their own act, by now denying that they intended any contempt of Court.

It is therefore considered and adjudged, that the said respondents are in contempt of the Court; and it is ordered and adjudged that the said respondents, A. C. Patterson and W. H. Deaver, be each of them imprisoned in the common jail of the County of Buncombe for the term of sixty days, and that they be each amerced and fined the several sums of two thousand dollars. And the said A. C. Patterson and W. H. Deaver being now here before me, and the Sheriff of the said County of Buncombe being now here present, it is ordered that the said Sheriff do forthwith take into his custody the said A. C. Patterson and the said W. H. Deaver

and hold them in close confinement in the said common jail of Buncombe County until the end of the sixty days' imprisonment, and that he hold in person each one of them thereafter until he shall have paid the fine imposed on him.

It is further ordered, that the respondents pay the costs of this proceeding, to be taxed by the Clerk of the Superior Court of Buncombe County."

To these findings of fact and the judgment thereon pronounced, the respondents excepted and appealed.

*Mr. C. A. Moore* (and *Mr. P. A. Cummings,* by brief,) for the respondents.

No counsel, *contra.*

SMITH, C. J., (after stating the case). The Judge finds as a fact that the prisoner Goodlake is out of the State and beyond the control of said Patterson, who, with the co-respondent Deaver, against whom the proceedings are directed, "*cannot produce him.*" The action now taken is not, therefore, to compel obedience to any mandate of the Court, for this has become impracticable, but as punitory only in its aims and operation. The parties still remain exposed to a criminal prosecution for the offence, in which, upon conviction by a jury, ample punishment can be awarded. Neither is it a means of coercing obedience, in the power of the party to render, to an order of the Court properly entered in a proceeding before the Court, in furtherance of its object. If it were, the power to imprison, reasonable in duration, would be commensurate with the attainment of its purpose, as is decided in *Cromartie* v. *Commissioners of Bladen,* 85 N. C., 211. But as a means of punishment merely, in addition to that which may be inflicted upon an indictment, and this upon facts found by the Judge without a jury, *Baker* v. *Cordon,* 86 N. C., 116, limits have been fixed by law upon the exercise of the power. *The Code,* § 649.

27

In declaring what *acts, omissions and neglects* may be punished for contempt, and excluding all others, are enumerated, § 648, pars. 4 and 5, "willful disobedience of any process or order lawfully issued by any Court;" "resistance willfully offered by any person to the lawful order or process of any Court;" and in § 651, the power is declared to belong to "every Justice of the Peace, referee, commissioner, Clerk of a Superior, Inferior and Criminal Court," as well as to the Justices of the Supreme and Judges of the Superior Court, "while sitting for the trial of causes or engaged in official duties." *In re Brinson*, 73 N. C., 278.

As the authority is conferred upon so large a class of officers, while exercising judicial functions, and when the guilt of the offender is to be ascertained without the intervention of a jury, as the right and at the instance of the accused ; *Baker* v. *Cordon, ante,* there have been limits assigned as well as the kinds of punishment allowed, and it is declared in § 649, that it " shall be by fine or imprisonment, or both, in the discretion of the Court; the fine not to exceed two hundred and fifty dollars and the imprisonment not to exceed thirty days." *In re Walker,* 82 N. C., 95.

The present case falls directly within the terms of the statute, and we are at a loss to find upon what grounds the able and learned Judge, who imposed the sentence of imprisonment for sixty days and a fine of two thousand dollars, on each of the offending parties, felt warranted in doing so, unless he overlooked the distinction we have pointed out, in the cases referred to in this opinion.   We have no hesitancy in recognizing the right of the General Assembly to pass the act defining and punishing contempts, as is done in the provisions we have cited, inasmuch as they do not undertake to deprive the Court, nor could they do so, of any of its inherent and essential functions, without which their duties, as judicial tribunals, could not be performed.

This renders necessary the reversal of the judgment en-

tered by the Judge below, and disposes of the appeal, without further examination of the case in reference to numerous other exceptions; but as it may facilitate the final settlement of the controversy, we will notice one of them, and that is to the effect that there is no evidence of a *willful disobedience* of the mandate, nor of a *willful resistance* to its enforcement, the first of which is found by the Judge *as a fact.*

It is quite apparent that the legal custody of Goodlake was with the agent Conner, and the execution of the writ consisted in making it known to the party detaining the prisoner, and this is done by leaving him a copy. It was thus served upon the agent, and the respondent could not legally take the control and possession of the prisoner from him, for whose defence against lawless and overpowering force if required, he was on the train. There is no evidence of his having the custody, so as to be able to produce the body without invading the rightful authority of the agent, conferred by the writ of extradition, that was being exercised in conveying the fugitive to the State wherein his alleged offence was committed. If he had counseled, or in any way aided in, the disobedience of the writ, so that the agent was induced or enabled to evade the requisition made upon him, he might, perhaps, have been responsible for the non-production of the body, or for resisting the order, a result willfully brought about by such participation in the conduct of the agent, by which the purposes of the writ were frustrated. But we see no evidence of this in the proofs offered, nor of opposition to the service of the order, unless it be in the objection to the Sheriff's entering the cars, and this plainly proceeded from the belief that he was not an officer or armed with authority, for as soon as the Sheriff announced his official character, no resistance was made to his entering and executing the order. It is true, the agent had secreted himself in another part of the train, leaving his prisoner in the

seat by the side of his assistant Howard, upon whom service was made, as it was afterwards made upon the agent himself; but it is not shown that the respondent, by act or word, interposed any obstacle in the Sheriff's way or hindrance to his executing the writ. We do not, therefore, find any testimony to support or to warrant an inference of a willful disobedience of the order of the Court, upon which the respondent was adjudged to be in contempt. This is the finding, and not that of resistance to the officer, upon which the penalty has been adjudged, and we must sustain this exception to the ruling.

While implicit submission to judicial authority, lawfully used, is an inexorable requirement of every one, and the Judge acted rightly in awarding the writ upon the verified statements in the application, the process of the Court had been grossly abused by the prisoner, in his repeated efforts to thwart the proceeding for extradition required by the Constitution of the United States, and enforced by the statute in this State, in the three different suings out of the writ, in each of which he was required, in order to obtain it, to swear "that the legality of his imprisonment or restraint has not been already adjudged," and imposing upon the Judge, from whom it was last sued out. It was his duty to issue it and enforce obedience, notwithstanding he would have dismissed the proceeding when regularly brought before him, and it was seen that the prisoner was in lawful custody of the agent under the highest authority, which had already been twice before adjudged to be lawful, yet it was rightly ruled that this defence was only available when the case was before the Judge, and formed no excuse for the conduct of the agent in carrying away the prisoner in defiance of the order, and he would, doubtless, have been held amenable to the heaviest penalties of a violated law. And so would have been his associate, who had charge of the prisoner, in fact was a confederate, as we understand his

relations to the cause, in the criminal misbehavior of his principal. But the testimony does not establish the finding of his participation in it, and for this reason, also, as well as for the excess in the punishment, the judgment must be reversed, and the error corrected. It is so adjudged.

Error.