IN RE T. J. PARKER.

(Filed 21 May, 1919.)

1. **Appeal and Error—Contempt—Courts—Statutes.**

   A wilful disobedience of the process or order of the Superior Court to desist from the doing of an act obstructing the lawful working of a public road, is not a contempt committed within the immediate presence or verge of the court, and an appeal will lie to this Court from the judgment of contempt. Rev., secs. 939, 940.

2. **Same—Findings—Evidence.**

   The facts found by the judge of the Superior Court in adjudging a party guilty of a contempt for disobedience of its order committed not in the immediate presence or within the verge of the court are conclusive on appeal, when supported by legal evidence, which in this case is held to be more than sufficient.

3. **Contempt—Process—Order—Disobedience—Intent—Statutes.**

   The wilful disobedience of a restraining order by the party on whom it had been served, and who was aware of its meaning and import, is in itself an act of contempt of court, under our statute, from which he may not purge himself by disavowing a disrespectful intent. Rev., secs. 939, 940.

In re T. J. Parker.

Motion for rule upon respondent to show cause why he should not be attacked for contempt because of disobedience, and the obstruction of an order of the court, issued by Judge Bond in another case, heard before *Bond, J.,* at December Term, 1918, of Gates.

The judge, upon the affidavits, found the following facts:

1. On 23 August, 1918, a restraining order in a cause pending, to which the respondent T. J. Parker was party defendant, was issued, a copy of said order is hereto attached. Mr. Parker was present when the order was made by the court, and was fully aware of its contents; that since then the court finds the facts from the evidence to be that the said Parker has wilfully disobeyed the terms, commands and spirit of the order which was lawfully issued by the Superior Court.

2. It further finds that he has offered wilful resistance to the lawful order and process of said court, in that by threats and display of weapons and in other ways he has attempted to defeat the carrying out of the terms of said order, with the terms of which he was entirely familiar.

3. The court finds as a fact that the acts complained of in the affidavit filed as a basis for this proceeding on the part of said Parker were intended to and did defeat, impair and prejudice the rights and remedies of the parties to said action, and prevented the parties named in said restraining order from using the authority and right to make changes in said fence and ditch in accordance with the language of the said order.

4. The court finds from the evidence in the cause that the conduct of the said Parker has been an intentional defiance of the lawful order of this court, and that he has attempted by threats of violence and display of weapons, and by threats as to what he would do, to defy and defeat the lawful and proper order of this court.

5. The rule to show cause why T. J. Parker should not be attached for contempt was issued on 10 December, 1918, and a copy was served on him on the same day. He was ordered to appear before the court on 11 December, 1918, at the courthouse of Gates County, and was furnished with a copy of the original affidavit, and was given such time as his counsel requested, until the latter could return from a trip to Warren County, to have the hearing. At the hearing he appeared in person and by counsel and filed affidavits in the case.

6. The court requested Solicitor Ehringhaus to appear in the matter for the purpose of protecting the order of the court, and designated him as the party upon whom any papers may be served at the request of Parker.

Upon the foregoing finding of facts it is adjudged, ordered and decreed by the court that the respondent Parker is guilty of contempt of this

court, and that he be imprisoned in the common jail of Gates County for a period of fifteen days, and in addition thereto that he pay a fine of one hundred dollars and the costs of this proceeding, to be taxed by the clerk.

As will appear by reference to finding No. 3, the judge also found the following additional facts, having held that the statements in plaintiff's affidavit, which he made the basis of the ruling, are true.

The highway commission hired Thomas Vaughan to go and move the fence. Vaughan went to move the fence, and from a sense of courtesy he went to the house of the defendant Parker and told him he had come for that purpose. The defendant Parker told said Vaughan that he had several sizes of shot for the man who attempted to move the fence, and he intended to shoot the first man who attempted to move that fence; that Bond (meaning Judge Bond) had ordered it moved, and if he wanted it moved let him come and move it himself; that said Vaughan, not wishing to be killed or injured, left the job and returned to Chairman Hale the material which had been given him to enable him to do the work. The said highway commission then went to W. J. Doughtie, known friend to defendant Parker, he having made an affidavit in his interest in the hearing at Edenton, for the purpose of employing him to do the work, having heard that defendant Parker had said he was willing for Mr. Doughtie to move it. Doughtie refused to have anything to do with moving the fence. He stated to Chairman Hale that he had heard defendant Parker say that he would shoot any man who went there for the purpose of moving that fence. Chairman Hale asked Doughtie if he understood Parker to be in earnest or just jesting, to which Doughtie replied that he took him at his word and did not want to undertake the job. The highway commission then reported all these facts to their attorney and asked to be advised. They were counseled to notify the sheriff of the county, J. W. Brown, to meet the commission at the place where the work was to be done on a fixed day and hour. To have six other good citizens of the county present. For the whole commission, every member, to go with the laborers on that day to move the fence or take the consequences. They went there on another occasion, when the sheriff was the first one to arrive. He found defendant Parker at the place where the work was to be done with a two-barrel shotgun, an axe and a grubbing hoe. The sheriff tried to reason with defendant Parker and persuade him to leave. He refused, and told the sheriff that he intended to shoot any man who came to do the work of moving that fence; the sheriff drove on up the road to Eures Station and met the commissioners and others, and reported what he had seen and heard. The sheriff, desirous of preventing bloodshed, suggested to the commissioners that he would precede them

30—177

and decoy defendant Parker, if he could, into his automobile, and take him away till the work could be done. The sheriff executed this plan, and defendant Parker took his shotgun and put it in the sheriff's car, and the sheriff took him a considerable distance before returning; the commissioners in the meantime, with their force, went there and moved the fence. On the night preceding the arranged day for moving the fence the defendant Parker went to the home of Commissioner Spark-man and called him out of his house, stated to him that he was informed that it was the purpose of the commissioners to move the fence the next day, and was told by Sparkman that that was true. Defendant Parker then stated to Commissioner Sparkman that if he intended to go there and move the fence the next day he had better kiss his wife and babies good-bye, for he was going to kill any man who went there to move that fence. Commissioner Sparkman told defendant Parker that he was going; that he had a message directing him to go, to which defend-ant Parker replied, "Well, you had better not go. I will shoot any man who puts his hands on that fence to move it, and before it is moved you will have to walk over my dead body." The highway commissioners have repeatedly tried to employ some one to cut out the ditch along the part of the road where the fence was moved, but everybody refuses, and stated that they were afraid of defendant Parker, and that they did not want any trouble with him.

The judge then adjudged the respondent to be in contempt, fined him $100, and ordered him to be imprisoned for fifteen days in the common jail of the county.

Respondent excepted and appealed.

*R. C. Bridger for respondent.*
*J. C. B. Ehringhaus, A. P. Godwin.*
*Attorney-General Manning and Assistant Attorney-General Nash, contra.*

WALKER, J., after stating the case: The statute provides, among other things, that any person found guilty of wilful disobedience of any process or order lawfully issued by any court, or of resistance, wilfully offered, to the lawful order or process of any court, shall be adjudged as having committed a contempt of the court, and fined not exceeding two hundred dollars, or imprisoned not exceeding thirty days, or both, in the discretion of the court. Rev., secs. 939 and 940. This is not a contempt committed within the immediate presence or verge of the court, and an appeal, therefore, lies from the judgment below. *Ex parte McCown,* 139 N. C., 95; *In re Deaton,* 105 N. C., 59; *Cromartie v. Comrs.,* 85 N. C., 211; *In re Daves,* 81 N. C., 74; *Ex parte Robins,* 63

N. C., 309. The findings of fact by the judge are conclusive upon us when there is evidence to support them, which is the case here. *Ex parte McCown, supra; Young v. Rollins,* 80 N. C., 125, and are reviewable only for the single purpose of passing upon the sufficiency of the facts, when there is competent evidence of their existence, to warrant the judgment. *Green v. Green,* 130 N. C., 578. It has been held, though, that when the facts are found by an inferior court they may be reviewed by the Superior Court. *In re Deaton, supra; S. v. Aiken,* 113 N. C., 653. When the Superior Court finds the facts in a *habeas corpus* proceeding, the revising tribunal, which is this Court, may adjudge whether they make out a case of contempt. *Ex parte Summers,* 27 N. C., 149; *Ex parte McCown, supra.*

The court below was well within the provision of the statute as to punishment, as it imposed only one-half of the maximum allowed. Rev., sec. 940. We agree with the court, though, as to the facts, being of the opinion that the evidence fully justifies its findings, and that it heard only competent proof of them. So that it brings us to this question, whether the findings show a case of contempt, for which the respondent could be punished. We have no doubt of the correctness of the decision upon this question. The court had issued a restraining order, in an action to which respondent was a party, forbidding him to interfere with the officers and agents of the law in laying out a public road, and especially by preventing them from removing his fence, which obstructed the way. This was a plain and direct order, which could be easily understood and obeyed, and yet the respondent, after he had full knowledge of its terms, deliberately, openly and defiantly refused to observe it, or to comply with its mandate, but on the contrary, by a display of his gun, accompanied by a bloody threat to take the life of any man who dared to remove the fence, he intimidated the officers and prevented them from executing the order of the court. His conduct was not only illegal but very reprehensible and contemptuous. If it was not a contempt, within the meaning of every definition of that term, we can hardly comprehend what combination of facts would present a case within the provisions of the statute. It was as plain a contempt as could be imagined or conceived.

This was not a case where the respondent could purge himself by disavowing that he intended to be disrespectful to the court, as the intention or motive was not involved, but, on the contrary, he is tried upon the fact of disobedience, which is of itself a contempt from the very nature of the act. He will not be heard to say that he did not intend to be contemptuous when he wilfully and obstinantly obstructed the coercive process of the court, and especially when he repeated the act and persisted in his resistance to the order. The court, too, finds

that he did intend to do what was done with the purpose of setting at defiance the order of the court, which was that he refrain from doing the very act. An apparent recalcitrant may purge himself of the charge that he has committed a contempt when the gravamen of the alleged offense rests upon intention or motive, but not when the intent is not involved and the contempt consists in doing the act. Respondent was allowed to purge himself of the contempt in *Hannan v. Grizzard,* 89 N. C., 115 (failure to induct an elected officer, believing him to be ineligible); *In re Walker,* 82 N. C., 96 (where he was allowed to excuse himself by showing that he did not have possession or control of a child he had been ordered to produce in court in a *habeas corpus* proceeding for the surrender of the child to its proper custody. *Justice Dillard,* with his usual clearness, draws the line of demarcation there between cases where intention or motive is involved and when it is not); *In re Moore,* 63 N. C., 397 (attorney's disbarment cases, where intent was the gravamen). Other notable cases are *Ex parte Biggs,* 64 N. C., 217; *In re Robinson,* 117 N. C., 533; *Kron v. Smith,* 96 N. C., 386; *Boyett v. Vaughan,* 89 N. C., 27; *In re Gorham,* 129 N. C., 481; *In re Young,* 137 N. C., 552; *Baker v. Gordon,* 86 N. C., 120; *Herring v. Pugh,* 126 N. C., 852. The party must, of course, possess the ability to comply with the order, and a lack of it excuses, as in the case of *In re Walker, supra.* But the motive to act in contempt of the court was manifest in this case, and was also found by the court to exist, so that tested by any rule the respondent was properly held to be guilty of contempt under the statute. It is not required that we decide whether he would be guilty at common law, because the power to punish in such a case is inherent in the court, as essential to its very existence and in order to preserve its dignity and power to enforce its orders and judgments. *Ex parte McCown, supra; Ex parte Schenk,* 65 N. C., 366; *In re Patterson,* 99 N. C., 418; *In re Oldham,* 89 N. C., 26; *In re Robinson,* 117 N. C., 533. We see, therefore, that Walker's case, relied on by appellant, has no application, as it does not decide what is supposed by him to be its legal effect. Nor does *Huet v. Lumber Co.,* 138 N. C., at p. 445, hit any nearer the mark. There the injunction was ineffectual because the act to be restrained was not only threatened but had been accomplished, as in the New Bern case of felling the tree (*Harrison v. Bryan and City of New Bern,* 148 N. C., 315), and there was no practical way of preventing an apprehended or threatened wrong, or of protecting the right by an injunction. *Pickler v. Board of Education,* 149 N. C., 221; *Huet v. Lumber Co.,* 138 N. C., at 445; *Wallace v. Wilkesboro,* 151 N. C., 614; *Moore v. Monument Co.,* 166 N. C., 211; *Little v. Lenoir,* 151 N. C., 417.

We may well close with a reference to what was held in several recent

cases covering fully the points herein raised. A party and his agents who wilfully violate a temporary restraining order enjoining the party and his agents from doing a specified act pending litigation are guilty of contempt of court. *In re Caro. C. and O. Rwy. Co.,* 151 N. C., 467. The motive of a party who directly and plainly violates a temporary restraining order is immaterial on the question whether he was in contempt for violating it. *Weston v. Lumber Co.,* 158 N. C., 270; and in such cases when guilt does not depend upon the motive, the violator cannot purge himself of the contempt by claiming that he did not intend to disregard the order or to be disrespectful to the court, as the baneful result flows logically and necessarily from his acts, *Mocksville Lodge No. 134 v. Gibbs,* 159 N. C., 66, and advice of counsel will not relieve him in law from liability for the penalty, but may be material on the question of punishment. *Weston v. Lumber Co., supra.* In this case, and those just cited, the act which necessarily obstructed the execution of the court's order was intentionally, and even wilfully, committed. Facts less strong than those found in this case were held sufficient to show that the restraining order of the court was knowingly and intentionally violated in *Davis v. Champion Fibre Co.,* 150 N. C., 84, and *Mocksville Lodge, etc. v. Gibbs, supra,* and in the case last cited it was also held that the finding by the court of the facts is not reviewable here, when the respondent was adjudged guilty of violating a restraining order, if supported by evidence. This is the general rule. See *Mormand v. Carlisle,* 131 Ga., 493.

It follows that there was no error in the proceedings and judgment of the lower court

Affirmed.