MALACHI KEYS v. IVEY ALLIGOOD.

(Filed 10 September, 1919.)

1. Contempt—Highways—Injunctions—Judgments—Punishment—Courts.

Where a defendant has violated a preliminary injunction of a court having jurisdiction in a pending action, the court may, in proper instances, order the defendant to undo the wrongful act committed by him in violation of its order and also defer the judgment punishing him for the contempt committed by him, to give him a chance to repent his unlawful act.

## 2. Contempt—Injunctions—Restoration—Mandatory Injunctions.

Where the defendant has been enjoined until the final hearing in a pending action from obstructing a public highway, from which order he has not appealed, and has, in violation thereof, made changes in the highway contrary to the order, the court, after giving the defendant a proper hearing, has the power to issue a mandatory injunction to compel him to restore the road to its former condition.

## 3. Injunctions—Contempt—Findings—Appeal and Error.

A violation of an order enjoining a defendant from obstructing a public highway in violation of plaintiff's rights is in contempt of court, and on appeal the findings of fact by the Superior Court judge are not reviewable in a collateral proceeding.

MOTION heard by *Devin, J.*, on 8 May, 1919, in BEAUFORT.

The court had issued an order restraining the defendants from in any way interfering with a certain road, and on return of the order, and after hearing the evidence and the argument of counsel, the court granted an interlocutory injunction to the final hearing, forbidding the defendants from entering upon the premises or using the road except strictly for purposes of ingress and egress, as heretofore, and no more. There was no appeal from this order, and while the interlocutory injunction was pending and still in full force, it was alleged and shown before the judge that defendants had wilfully violated the same. Plaintiff thereupon asked for a mandatory injunction to compel the defendants to restore the former condition of things, and to desist from further interference with the road or its ditches, or from further disobeying the injunction. The court heard the parties, found that the injunction had been violated, and ordered the defendants to restore the ditch bank to the place from which they had removed it. This order is stated to have been made at the election of plaintiff, the court withholding the question as to the imposition of any penalty for disobedience. Defendants appealed.

*No counsel for plaintiff.*
*Harry McMullan and John G. Tooly for defendants.*

WALKER, J., after stating the case: It is somewhat difficult to understand from the record whether the court withheld the punishment for the contempt in violating the order until the defendants had reasonable time and opportunity to restore the ditch bank, or whether the mandatory injunction was issued absolutely and without regard to any alternative judgment in the way of punishment for the contempt. We rather favor the former construction of the order, but will consider it in both phases.

2—178

1. If the order was in the alternative, there can be no question as to the power·of the court to make it. Before passing sentence of fine or imprisonment, the court had the undoubted right to give the defendants a chance to repent and undo the wrongful act committed by them in violation of its order.

2. But if the order is to be taken as one for a mandatory injunction, requiring the defendants to replace the ditch bank, we still think it was valid. The cases upon the power of the court to issue such an injunction before final decree are somewhat in conflict, but if proper distinctions are made we think they may be reconciled. Some of them, which hold that such a mandatory order cannot be issued until the final decree is passed, seem to refer to those instances where the alleged wrongful act was fully accomplished before the suit was commenced, and not to cases where the wrong ordered to be undone was itself in violation of an interlocutory injunction, as here. A learned and accurate text-writer.has said that there would seem to be no good reason why, in a proper case, a mandatory injunction should not issue upon preliminary hearing. Gross violations of rights may occur in the shortest possible time, and a few hours' wrong-doing may result in the creation of an intolerable nuisance or in the production of an injury which, if prolonged, might soon become irreparable. In such cases the interposition of the strong arm of the chancellor ought to be most swift, and if the immediate relief afforded could not, in a proper case, be restorative, as well as prohibitory, no adequate redress would, in many instances, be given. Bispham's Pr. of Equity (9 Ed.), p. 638. And so it was held in *Murphey v. Harker,* 115 Ga., 77, that when one who has notice that an injunction has been granted against him, though he has not been formally served with the writ, does an act which is a violation of the injunction, and thus changes the status of the property involved in the case, the judge may at an interlocutory hearing, or upon an application for an attachment for contempt, require the offender to restore the status as it existed at the time he first received notice that the injunction had been granted. The Court, by *Justice Hall,* in *Robinson v. Wood-mansee,* 76 Ga., 830, said it was not error to require that the defendant restore the status, as it existed at the time of the wrongful act, as it was but "a mild use of the judge's discretion." It is said in 1 High on Injunctions, at end of sec. 5, p. 10: "Where, before the granting of the injunction, the defendant has thus changed the condition of things, the court may not only restrain further action by him but may also, by preliminary mandatory injunction, compel him to restore the subject-matter of the suit to its former condition. And in so doing the court acts without any regard to the ultimate merits of the controversy." Mr. Bispham in his treatise on Equity (9 Ed.), sec. 400, at p. 637, says that

the inclination of the courts of this country was, at one time, against granting a mandatory interlocutory injunction, but that the "tendency, however, is now towards greater liberality in granting such applica-tions," and that many occasions may arise which render a mandatory injunction necessary. In another part of that section he further says: "An injunction may, therefore, be said to be either mandatory or pro-hibitory. A mandatory injunction is one that compels the defendant to restore things to their former condition, and virtually directs him to perform an act. The jurisdiction of the court to issue such a writ has been questioned, but it is now established beyond doubt. 'This court,' said *Lord Justice Cotton* in *Loog v. Bean,* 'when it sees that a wrong is committed, has a right at once to put an end to it, and has no hesitation in doing so by a mandatory injunction, if it is necessary for the purpose.' The form of the order, however, was not, under the old practice, direct in its terms, but the end was reached by a writ apparently prohibitory. Thus an injunction that a defendant should deliver up books and papers in his possession had been issued in the prohibitive form. . . . This order, it will be observed, is in terms a restraining order, but in effect it is a command to the defendant to deliver up the books and papers. Under the modern practice the better form, perhaps, is that the decree should be not only in effect, but in terms, mandatory."

It has been conceded in many cases that such an injunction before the final hearing will be issued where, though mandatory in substance, it is prohibitory in form, but several text-writers and some of the judges have said that this is a distinction without any difference and should not longer exist. Hilliard on Injunctions, 8. It was said in *Bosley v. Susq. Canal,* 3 Bland's Ch. (Md.), at p. 66, that while a court of equity will not, in the first instance, command a thing to be done or to be undone by an injunction mandatory in form, yet where acts have been done in violation of an injunction it will order them to be undone or the matter restored. We can conceive of no sound reason why the court may compel a thing to be done or undone by a restrictive injunction, and not require the same thing of the defendant by an injunction mandatory in form. Of course, the defendants should be heard before the mandatory writ is issued, and it should be confined to those cases where it is necessary in order that the status quo may be preserved, but where a previous injunction has been violated we do not see why obedi-ence to it should not be forced by a restoration of things to their former condition. It would be permitting a recalcitrant defendant to profit by his wrong done in contempt of an order forbidding it. Where it is the obstruction of a right of way, as here, there is no difference in ordering him to remove it and requiring him to desist from continuing

it. The subject is fully discussed, and our view sustained, in *Vicksburg, etc., Rwy. Co. v. Webster, etc., Co.,* 132 La., 105, and in the note to that case as reported in 47 L. R. A. (N. S.), 1155.

*Lord Eldon* in one case, *Lane v. Newdigate,* 10 Vesey, 192, was of the opinion that he could not direct the thing specifically to be done, but that he could make an order which would indirectly have that very effect, which he accordingly did, stating how the order should be drawn, by making it restrictive in form, which *Lord Brougham,* commenting generally upon that kind of practice, considered as merely a "round-about mode," the injunction not commanding anything to be done or undone, but simply that an injurious irregularity should not be permitted any longer to exist, regarding the continuance of the act as a repetition of it. In these days we have found what we deem to be a better method and look rather to the substance than to the form of things, as being a more direct, simple and effective way of dealing with the rights and remedies of litigants. We prefer the modern method, and the tendency of the courts, we are told, has strongly set in that direction.

Why not call this process by its right name instead of granting what is really mandatory, under the guise of preventive relief? When this is done, we are trying to deceive ourselves, for no good or practical reason, when we know what we are actually doing or what the inevitable effect will be. It is simply adherence to an old form and custom of the court of equity, which did not even gain the approval of some of its ablest chancellors. In modern times, since we try to call things by their true and appropriate titles, so we may be better understood, the decided trend of the courts, especially in this country, is towards a more sensible policy, as we have already shown by authority.

We must be careful to remember, in this connection, that whether the defendant in an injunction suit who violates the order should be punished for the contempt shown the court, concerns the court in the matter of the maintenance of its dignity and authority; but whether, by coercive or punitory measures, such defendant should be compelled to obey the writ issued by a competent court for the preservation of a civil right asserted by the plaintiff, concerns the plaintiff, and the action of the trial court on that question may be subject to review on appeal; but where the court has full jurisdiction in the premises, its findings of fact, as to the disobedience of its order, are not open to review in a collateral proceeding, such as *habeas corpus.* 14 Ruling Case Law, sec. 170; *Vicksburg, etc., R. R. Co. v. Webster, etc., Co.,* 132 La., 1051. Applying the foregoing principle to this case we find that there has been an open and defiant violation of the interlocutory injunction issued by the court. Rapalje on Contempts, sec. 41. The defendants have done

what they were clearly prohibited from doing. If the *status quo* cannot be restored by a mandatory injunction, the orders of a court can easily be set at naught and valuable rights destroyed without commensurate redress. The party may be punished for contempt by fine or imprisonment, but this will not reinstate the former condition and be of no pecuniary benefit to the plaintiff. It is surely no adequate restoration of what he has lost by the defendants' wrongful act. If a party who has defied the court, and deliberately violated its order, cannot be made to yield full obedience to it by undoing what he has so flagrantly done, in contempt of the court, and in plain violation of the plaintiff's rights, the arm of the court has lost its boasted strength and its power to grant protective relief. But we do not admit that this has been the unfortunate result of the decisions, which appear to be growing more and more favorable to the doctrine that such an interlocutory injunction, mandatory in form and substance, may be granted, that is, before decree, when it is done to compel restoration where the wrong was committed by disobeying the order of the court.

This is not punishment for the contempt, not authorized by the statute, as contended by the defendants, but is merely a method of enforcing the court's order. As said in *Cromartie v. Comrs.*, 85 N. C., 215, when referring to the statute as to contempts: "It will be noticed that, throughout these latter portions of the statute, the proceeding is designated not as the former but a proceeding 'as for contempt,' and while regulating, not intended to deprive the court of its well-established jurisdiction to enforce obedience to its lawful orders as before possessed and exercised. 'Without the ability to compel obedience to its mandates,' say the Court in *Pain v. Pain*, 80 N. C., 322, 'whether the order be to surrender writings in possession of a party, to execute deeds of conveyance, to pay money, as in the present case, or to perform any other act the court is competent to require to be done, many of its most useful and important functions would be paralyzed.' The order here is coercive only upon persons capable of performing its requirement, and its force is exhausted by rendering obedience. There is, therefore, no excess of power apparent in the judgment." The order there was one for the imprisonment of the defendants until they complied with the former order of the court, and was not one for their punishment, by fine or imprisonment or both, for disobedience to such order. As here, it is simply coercive process. This distinction is also mentioned in the case of *In re Patterson*, 99 N. C., 407. Whether the court also will punish the defendants for the offense against its dignity and authority is left to its sound discretion.

We find no error in the record.

No error.