E. P. ANDERSON ET AL., TRUSTEES, AND LAKE JUNALUSKA METHODIST ASSEMBLY, INCORPORATED, v. THE TOWN OF WAYNESVILLE, THE TOWN OF HAZELWOOD, AND ENGLAND WALTON AND COMPANY, A CORPORATION.

(Filed 15 June, 1932.)

1. **Appeal and Error F a—Only exceptive assignments of error will be considered on appeal.**

    An assignment of error to the trial court's failure to find additional facts is without merit when not based upon an exception taken during the trial, it being required that the appellant request such additional findings and except to the court's refusal of the request.

2. **Municipal Corporations E f—Where municipal sewage causes irreparable injury and exigencies do not prevent abatement, injunction may lie.**

    Where there is evidence that an incorporated town emptied raw sewage into a stream which resulted in polluting a lake upon which another town had been located, rendering the lake unfit for bathing by causing its waters to carry a high bacterial count dangerous to health and to give off objectionable odors, and causing depreciation of values of business and residential property in the lower town by reason of such odors, and that the lower town, besides having a few permanent residents, entertained several thousand summer visitors and was used as a health resort and as headquarters of a religious denomination, and that the sewage disposal of the upper town was defeating the objects for which the lower town was incorporated: *Held,* the evidence tends to show irreparable damage from a civil wrong causing annoyance in the enjoyment of the legal rights of the residents and visitors of the lower town to the use and privileges of the water of the lake without interference with their health and comfort, and where the exigencies of the upper town do not preclude the abatement of the nuisance, an injunction may be issued in the suit of the lower town upon a sustaining verdict of a jury, and the right to abatement may not be defeated by a demand that permanent damages be assessed.

3. **Same—In this case held: plaintiffs were not barred by laches from asserting their right to abatement of nuisance from sewage.**

    Where, before the erection of a dam for a lake, a town located farther up along the stream contracts in writing to satisfactorily dispose of its

sewage, which it failed to do although a bond issue for this purpose was authorized by popular vote, and fourteen years thereafter the sewage from the upper town began to cause appreciable damage to the town located at the lake, and thereupon the parties sought to establish a sanitary district, and upon failure of their efforts to do so, brought suit for the abatement of the nuisance three years after appreciable damage from the sewage: *Held*, the lower town was not barred by laches from asserting its right to abatement, the evidence tending to disprove acquiescence in the trespass, and the upper town not having acquired title by prescriptive use.

**4. Equity B a—Laches will not defeat right to abatement of nuisance until right to maintain nuisance has been acquired by prescription.**

Ordinarily, an action will not be barred by laches unless the legal right has been lost by delay, and injury to land caused by the maintenance of a nuisance gives rise to successive causes of actions, and the right to abatement thereof will not be defeated unless the nuisance has been maintained long enough to effect a change of title by prescription.

**5. Eminent Domain A b—Power of eminent domain does not extend to condemnation for maintenance of private nuisance.**

The power of eminent domain does not extend to condemnation of property for unlawful purposes, such as the creation of private nuisances, which in proper instances are subject to equitable restraint.

**6. Actions C b—Action for prior damages may be joined with suit for injunction.**

The right to recover damages for prior injury is not essentially inconsistent with injunctive relief to prevent future injury.

**7. Municipal Corporations E f—Sewer system in this case held not of such exigent nature as to prevent relief by abatement.**

A municipal system which discharges raw and untreated sewage into waters used by a multitude of people, causing irreparable damage, *is held* not of such exigent nature as to deny relief by abatement.

**8. Injunctions D a—Whether plaintiff came to nuisance held important on the question of issuing preliminary mandatory injunction.**

The granting of preliminary mandatory injunctions is within jurisdiction of courts of equity, but they are usually granted with caution, their purpose being to restrain the defendant from permitting his previous act to operate, or to restore conditions existing before the commission of a wrong, or to preserve the *status quo*, until a final determination, and *Held*, whether the plaintiff "came to the nuisance" has an important bearing upon the question of whether a preliminary mandatory injunction should issue in a suit for abatement, although the right to permanent abatement would not be denied for this reason.

**9. Injunctions E a—Absolute order for abatement of alleged nuisance without a finding by a jury held erroneous.**

An absolute order for the abatement of an alleged nuisance without a finding by the jury that such nuisance existed is error, the question of the existence of the nuisance being the principal matter in dispute with the burden of proof on the plaintiff.

APPEAL by defendants from *Harwood, Special Judge,* at Chambers, 16 May, 1931. From HAYWOOD. Error and remanded.

This is an action to recover damages for a nuisance alleged to have been caused by the defendants' discharge of raw and untreated sewage and tannery refuse into Richland Creek from which it is carried into Lake Junaluska, the property of the plaintiffs. The plaintiffs seek also a mandatory injunction to abate the nuisance and a prohibitory injunction to prevent its recurrence.

Upon consideration of the pleadings, affidavits, oral testimony, and other evidence the court found the following facts:

1. That the properties known as the Southern Assembly Grounds are owned and possessed by the plaintiffs herein, for the uses and purposes of the Methodist Episcopal Church, South.

2. That said properties consist of a lake, formed by means of a concrete dam across Richland Creek, built at a cost of $110,000, being a depth of from two to three feet to a depth of about forty feet, and covering an area of some two hundred and fifty acres of land; a tract of land divided into about twenty-four hundred building lots; averaging 60 x 150 feet; a nine-hole golf course; a commodious and capacious auditorium, with a seating capacity of thirty-five hundred; an office building, housing the several administrative offices of the plaintiffs; a drug store and photograph shop; a boat house, containing a tea room, gift shop and barber shop; one hotel known as the Terrace Hotel, containing one hundred and thirty-five rooms, neatly and comfortably furnished; a bath house and piers; a postoffice building; a fully equipped children's playground; sites for two camps for boys and girls completely equipped and annually conducted as follows: Camp Junaluska and Camp Cheonda, all of which has a value of $800,000.

3. That the plaintiffs, since said project commenced, have sold for residential and other purposes, approximately five hundred lots, upon part of which there have been built and constructed one hundred and fifty privately owned homes, and ten hotels and boarding houses within the boundaries of plaintiffs' properties.

4. That the Southern Assembly was chartered and organized for the purpose of establishing and maintaining in Haywood County, North Carolina, a municipality of the Methodist Episcopal Church, assemblies, conferences, conventions, public worship, missionary and Sunday school work, orphan homes, manual trades, training and other operations auxiliary and incidental thereto; and also a religious resort for health, rest, recreation, Christian work and fellowship, to the end that those who from time to time might desire to secure an enlargement of vision concerning the needs of the world and the relations of the church thereto;

to learn by study and discussion the details of the policies by which such needs are to be met, and the most efficient methods of church work; to obtain inspirational and spiritual illumination for righteous and upright living, to the end that those availing themselves of the privileges and advantages so offered, might return to their respective congregations and callings better prepared spiritually and intellectually to aid the work and objects of the church in its moral life as well as in its functional activities.

5. That the Southern Assembly, the predecessor in title of the plaintiffs herein, was duly incorporated under chapter 419 of the Public Laws of 1909, and the plaintiffs have succeeded to all of the rights, privileges, immunities, advantages and properties formerly owned by the said Southern Assembly.

6. That one of the primary and principal objects, purposes and inducements of the plaintiffs, and their predecessors, in the selection of the site of their plant was the attractive climate, the scenic beauties of said location, and the fact that Richland Creek runs through said properties, which creek has its source only six or eight miles away from said plant in the Balsam Mountains, at an altitude of some five thousand feet, furnishing to said plant and its surroundings water of unusual clearness, purity and beauty.

. 7. That the lake grounds and properties of the plaintiffs have an all-year-round permanent population of twenty-one adults and seven children; but each season since said plant was constructed and developed, prior to the institution of this action, there have been at Lake Junaluska each year students, teachers, ministers and visitors to the number of about 10,000 each year.

8. That the town of Waynesville is a municipal corporation, duly incorporated, organized and existing under and by virtue of chapter 31 of the Private Laws of the State of North Carolina of 1871, as amended by chapter 127 of the Private Laws of 1885, and other subsequent amendments. That said town of Waynesville is a growing town, with a population of some 2,500 to 3,500 permanent residents, and being a resort town during the several seasons of the year has and entertains a large number of visitors amounting in the aggregate to some 10,000 people annually, the said town being situated about two miles above Lake Junaluska.

9. That the town of Hazelwood is a municipal corporation, duly chartered, organized and existing by chapter 91 of the Private Laws of 1905. That the said town of Hazelwood is a growing town and has a population of from 1,500 to 2,000 permanent residents, and is situated about three miles above Lake Junaluska.

10. That about the year 1901 the town of Waynesville established a sewerage system for the use of its inhabitants, extending the outfalls of said system into Richland Creek, and thereafter, to wit, sometime after the year 1921 greatly enlarged said system for the use of its inhabitants, and from the time said system was established up until the present time the sewage from said town in its raw state empties and runs into Richland Creek above the plaintiffs' lake and properties, and the said town of Waynesville threatens and purposes to continue to empty, discharge, and run its sewage into said Richland Creek without providing septic tanks, disposal plants or any other methods approved and in general use for treating and purifying the same.

11. That in the year 1914 the town of Hazelwood constructed a sewerage system and since the construction thereof has discharged its sewage in a raw state into Richland Creek above the plaintiffs' lake and properties, and the said sewage passes through a populous part of the adjoining town of Waynesville for a distance of about one and one-half miles. No complaint has ever been made by the inhabitants of Waynesville or by the inhabitants residing near said Richland Creek with reference to the sewage discharged into said creek by the town of Hazelwood. No objectionable odors arise from Richland Creek as it passes Waynesville. No bacterial count of the water between Hazelwood and Waynesville has been made, but it is admitted that said creek is polluted to a certain extent by the sewage so discharged by the town of Hazelwood. No case of infectious disease by persons residing on said creek has ever been brought to the attention of the authorities of the town of Hazelwood. That Richland Creek, after it leaves the town of Hazelwood passes through the town of Waynesville, is about two and one-half feet deep and about twenty feet wide, and runs over a rocky bottom composed of varying sized stones which have been washed down from the upper reaches of the watershed. And the said town of Hazelwood threatens and purposes to continue to empty, discharge, and run its said sewage into said Richland Creek without providing septic tanks, disposal plants or any other methods approved and in general use for treating and purifying the same.

12. That the aforesaid raw and untreated sewage from the said towns of Waynesville and Hazelwood, combining, concurring, uniting and mixing in the waters of said Richland Creek, run and flow into Lake Junaluska, thereby greatly polluting, contaminating and corrupting the waters of said creek and lake, causing the same to become filled and impregnated with divers noxious, poisonous, and unwholesome smells, fumes, vapors, odors, and stenches, and by reason thereof an offensive, harmful and dangerous nuisance has been created and remains in said

Lake Junaluska, and by reason thereof some people who have heretofore been in the habit of visiting Lake Junaluska and availing themselves of the advantages there offered have avowed their purpose to no longer visit said lake on account of the aforesaid unwholesome and dangerous conditions.

13. That the waters of Lake Junaluska are not injurious to health except when used for bathing purposes, or to persons taking the same into his or her system; but on the hearing evidence of medical experts was offered tending to show that several persons residing and visiting at said lake during the year 1930 developed skin diseases, which was attributed by their attending physician to bathing in the waters of said lake, and on the hearing there was evidence of medical experts offered tending to show, that the aforesaid conditions in said lake greatly menace and endanger the health of the people residing at and in the vicinity of said lake, and there is great danger that said condition will cause the spread of disease, and particularly typhoid fever.

14. That neither the plaintiffs nor their predecessors in title have ever installed a sewerage system for their own use and the use of the people residing at Lake Junaluska, but have installed a system of septic tanks by and with the consent and approval of the State Board of Health; and the court finds as a fact that the waters of Lake Junaluska are seriously contaminated and polluted by reason of the emptying of sewage and other waste matter therein, to which persons not parties to this action contribute in some degree.

15. That where the waters of Richland Creek flow into Lake Junaluska a total bacterial count of 10,000 in one one-hundredth of a cubic centimeter is found, showing a high degree of pollution at this point. That a test of water taken from the center of the lake shows a total bacterial count of 600 colon bacilli in one one-tenth cubic centimeter. That water taken from a point near one of the septic tanks of the plaintiffs is located on said lake shows a bacterial count of 700 colon bacilli in one one-tenth cubic centimeters. That a later test taken on 11 May, 1931, of a sample of water taken at a point about four feet below the surface of the lake in the immediate vicinity of the public bathing beach, after a bacteriological analysis shows the presence of colon bacilli in one one-hundredth of a cubic centimeter and a total bacterial count of 800.

16. That prior to the year 1927 no offensive odors, fumes or smells were ever observed arising from said lake, but thereafter, to wit, since the summer of 1927, at all seasons of the year, and especially during the summer season, and more especially in very hot weather, the odors, smells and stenches arising from the waters of said lake are constant and are of an extremely offensive character.

17. That by reason of said offensive harmful and dangerous nuisance, the aforesaid noxious, poisonous, offensive and unwholesome smells, fumes, vapors, odors and stenches continuously ascend, and go into the homes, dwellings and business houses of the people aforesaid, thereby greatly impairing the use and quiet and peaceable possession and enjoyment of said property, and also thereby rendering said homes, hotels and boarding houses uninhabitable, and greatly menacing, impairing, injuring and destroying the health of the people residing in said homes and buildings.

18. That the condition of the waters of said lake is such that the representatives of the State Board of Health have advised, and one of such representatives testified in this cause, that if said lake was to be continued to be used for bathing purposes it would become the duty of and it would be necessary for the State Board of Health to prohibit the use of said lake for bathing purposes.

19. That beginning in the year 1912, the Southern Assembly, plaintiffs' predecessor in title, commenced the construction of a concrete dam across Richland Creek approximately forty feet high, near the present station of the Southern Railway Company at Lake Junaluska, and completed the same during the year 1913, at a cost of $110,000.

20. That prior to the creation of the aforesaid nuisance the waters of said lake were pure, clear and wholesome; that by reason of the nuisance aforesaid the said waters have now become highly discolored and have a foul and unsightly appearance, and a loathsome and distasteful quality, a greenish and greasy appearing scum having formed thereon, which when disturbed permits to arise therefrom a mist and steam of offensive smell and odor.

21. The court finds that the necessary effect of the nuisance so created, if permitted to continue, will be to seriously impair the properties, and ultimately to totally destroy the objects, aims, purposes and projects of the plaintiffs, and to cause them and persons interested in said projects to suffer great and irreparable loss and damage.

22. The court further finds that if the nuisance so created by the defendants, as aforesaid, is permitted to continue, it will necessarily give rise to a multiplicity of vexatious actions and a series of litigations.

Upon these findings the court adjudged that the town of Waynesville and the town of Hazelwood within twelve months from the signing of the decree fully, entirely, and completely abate and remove the nuisance; that they thereafter be enjoined from emptying sewage into or otherwise polluting and contaminating the waters of Richland Creek above the property of the plaintiffs; and that upon the installation by the defendants of a sewerage system by and beyond Lake Junaluska the

plaintiffs shall have the right or option to connect therewith without expense to the defendants and upon payment to them of such reasonable charge as may be agreed upon by the parties or their successors.

The town of Waynesville and the town of Hazelwood excepted and appealed. As to England Walton and Company the cause was continued by consent.

*T. D. Bryson and Alley & Alley for plaintiffs.*
*Morgan, Stamey & Ward for both appellants.*
*Joe E. Johnson for town of Hazelwood.*

ADAMS, J. Conceding the practice that findings of fact by the trial court, if supported by evidence, are not likely to be questioned on appeal, the defendants say they "will spend no time in debating the correctness of the facts"; but they suggest error in the court's failure to find the facts with respect to some of their contentions.

This assignment of error is without merit. The record contains no entry of a request for the finding of additional facts and necessarily no exception to the action of the court in this respect. The request must have been made and refused and an assignment of error must have been based upon an exception taken during the trial. *McLeod v. Gooch,* 162 N. C., 122; *School v. Peirce,* 163 N. C., 424.

The appellants argue that upon the facts as developed the relief to be given the plaintiffs, if any, must be restricted to the recovery of pecuniary damages in a court of law. They contend, first, that the individual plaintiffs sustain toward the corporate plaintiff a relation similar to that of a board of directors and that the corporation has suffered no damage that cannot be compensated in money. This view is inconsistent with the facts. The plaintiffs have produced evidence that the defendants have perpetrated a civil wrong which annoys in the enjoyment of their legal rights those whom the plaintiffs represent—not only those whose permanent home, though comparatively few in number, is at the lake, but several thousands of people who spend the summer there and who are entitled to the use and privilege of the water without interference with their health and comfort.

It is urged, in the second place, that the plaintiffs have been negligent in the assertion of their rights and that their laches restricts them to compensation in money. We do not concur in this conclusion. Let us concede that the lake was built in 1913 and that until the present action was instituted the plaintiffs took no legal action. Before the dam at the lake was begun the town of Waynesville contracted in writing to connect its sewerage system with the upper edge of the lake, or otherwise satisfactorily to arrange the Waynesville sewerage. In 1913 the town was

authorized by popular vote to issue $20,000 dollars for the purpose of complying with its contract, but the bonds have never been issued. The deleterious effect of the sewage on the waters of the lake became appreciable in 1927 and thereafter the parties in several conferences tried to adjust their differences by establishing a sanitary district. It was not until these efforts had failed that the plaintiffs brought this suit.

As we understand, the courts generally enforce the rule that a plaintiff does not lose his remedy by mere laches unless by delay his legal rights also are lost and the defendant acquires by prescription a right to commit the nuisance. The evidence tends to disprove acquiescence in the admitted trespass. The injury resulting from a nuisance or a trespass upon real property is continuous in its nature and gives successive causes of action as successive injuries are perpetrated. Continuous injuries caused by the maintenance of a nuisance are barred only by the running of the statute against the recurrent trespasses; and mere inaction on the part of the plaintiff will not defeat his right unless it has continued long enough to effect a change of title. *Galway v. Metropolitan R. Co.,* 13 L. R. A. (N. Y.), 788; 1 Ames, Equity Jurisdiction Cases, 600; *Northern Pac. R. Co. v. Boyd,* 228 U. S., 482, 57 L. Ed., 931. In *Southern Pacific Company v. Bogert,* 250 U. S., 483, 63 L. Ed., 1099, the Supreme Court of the United States said this in reference to the doctrine of laches: "More than twenty-two years had thus elapsed since the wrong complained of was committed. But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong, or lack of diligence in seeking a remedy." The claim that the plaintiffs by reason of laches can recover nothing more than pecuniary compensation is in our opinion altogether untenable.

For these and other reasons the defendants have acquired no prescriptive right to pollute the waters of the lake. The negotiations between the parties are inconsistent with the notion of adverse user for the required period. 20 R. C. L., 499.

The appellants next contend that the object of the action is the recovery of damages, that they requested an assessment of permanent damages, and that in consequence the plaintiffs' right to call for an abatement of the nuisance is lost. To sustain this proposition they cite *Rhodes v. Durham,* 165 N. C., 679 and *Wagner v. Conover,* 200 N. C., 82. These cases are not decisive of the question. In like manner with several others they apply to an award of damages for injury to land, in which the measure of damages is the impaired value of the property. Such injury is compensable in money. In the former case the Court expressed the determinative proposition as follows: "Our decisions are also in support of the proposition that where the injuries are by reason

of structures or conditions permanent in their nature, and their exist-
ence and maintenance is guaranteed or protected by the power of emi-
nent domain or because the interest of the public therein is of such an
exigent nature *that the right of abatement* at the instance of an indi-
vidual is of necessity denied, it is open to either plaintiff or defendant
to demand that permanent damages be awarded."

The power of eminent domain does not imply the power to condemn
property for unlawful purposes, such as the creation of private nuis-
ances. Such an undertaking is subject in proper cases to equitable
restraint. Joyce on Nuisances, 273, sec. 284.

It will be observed that the relief prayed for includes damages, and
mandatory and preventive injunctions. A right to recover damages for
injury done prior to the beginning of an action is not essentially in-
consistent with a subsequent injunction. "A nuisance may be abated in
the same action in which damages are recovered." Hale on Torts, 446.

A system of drainage which discharges raw and untreated sewage into
water used by a multitude of people even for a limited period cannot
be regarded of such an exigent nature as to deny relief by abatement
when irreparable damage is done. The plaintiffs, therefore, have not
lost their right to insist upon an abatement of the alleged nuisance.

The appellants present a more serious question in their exception to
that part of the decree which orders a permanent mandatory injunction
without a finding by a jury that the discharge of sewage into the creek
pollutes the waters of the lake so as to create a nuisance.

The grant of a preliminary mandatory injunction is, of course,
within the prerogative jurisdiction of courts of equity. The injunction
is generally framed so as to restrain the defendant from permitting his
previous act to operate, or to restore conditions that existed before
the wrong complained of was committed. It is sometimes issued to
preserve the *status quo* until, upon the final hearing, the court may
grant full relief; but it is usually granted with caution. Bispham's
Principles of Equity, 558. Instances of its application may be found in
*Telephone Company v. Telephone Company,* 159 N. C., 9, in which a
severed telephone connection was restored pending further proceedings;
in *Keys v. Alligood,* 178 N. C., 16, in which the defendants who had
disregarded an order of court were required to restore a ditch bank to
its previous place; and in *Woolen Mills v. Land Company,* 183 N. C.,
511, in which the defendants who ignored orders made by a board of
commissioners undertook by force to accomplish an object which they
could not attain by law.

In each of these cases the defendant proceeded knowingly in breach
of a contract or wilfully in disregard of an order of court. But in the

case before us at least one of the defendants emptied sewage into the creek before the lake was built and apparently not to evade an anticipated order or judgment. The defendants say that the plaintiffs "came to the nuisance" if a nuisance exists. If so, the plaintiffs would not for this reason be denied relief by abatement, but the fact would have an important bearing on the question whether a preliminary mandatory injunction should be issued. *U. S. v. Luce,* 141 Fed., 410.

However, in this case such an injunction was not issued, and, it seems, was not applied for. Instead, the court embraced in its decree an order, absolute in its terms, that the defendants within twelve months should "fully, entirely, and completely abate and remove the aforesaid dangerous nuisance," thereby adjudging without the aid of a jury the existence of a nuisance, which was the principal matter in dispute. In this there is error. It is incumbent upon the plaintiffs to establish both a right to be protected and an infringement of their right. *Vickers v. Durham,* 132 N. C., 880; *Durham v. Cotton Mills,* 141 N. C., 615; *Little v. Lenoir,* 151 N. C., 415.

There is error. The cause is remanded for further proceedings in accordance with this opinion.

Error and remanded.