SEABOARD AIR LINE RAILROAD COMPANY v. ATLANTIC COAST LINE RAILROAD COMPANY AND WILMINGTON RAILWAY BRIDGE COMPANY.

(Filed 30 January, 1953.)

**1. Injunctions § 6a—**

A temporary restraining order will lie for the purpose of preventing the commission or continuance of some act which during the litigation would produce injury to the plaintiff or which would tend to render judgment in his favor ineffectual, to the end that the *status quo* be preserved pending the action. G.S. 1-485.

**2. Injunctions § 6b—**

A preliminary mandatory injunction may issue when it is made to appear with reasonable certainty that complainant is entitled to the equitable relief sought and that the issuance of the writ is reasonably necessary to restore to complainant that which was wrongfully taken from him or to restore a status formerly existing between the parties.

**3. Same—Issuance of preliminary mandatory injunction which in effect determined action on its merits held error.**

Plaintiff railroad company sought the right to construct a spur from the main line of a track operated by it and defendant railroad company jointly, though owned by a third corporation, plaintiff contending that the third corporation was a passive trustee holding legal title for the joint benefit of plaintiff and defendant, and that defendant corporation, having control of such third corporation, was in effect an active trustee and should not be permitted to exclude plaintiff from an opportunity to share in the profitable use of the facilities jointly owned by them. *Held:* Plaintiff is not entitled to a preliminary mandatory injunction restraining defendant from interfering with the construction and use of such spur track by

R. R. *v.* R. R.

plaintiff, since the effect of such order is not to restore a prior status or to prevent defendant from having the advantage of a change in status brought about by a wrongful act, but to establish a right in plaintiff prior to the determination of the action on its merits before defendant had had time to answer.

**4. Appeal and Error § 1—**

A matter not presented in or decided by the lower court is not before the Supreme Court on appeal.

Appeal by defendant Atlantic Coast Line Railroad Company from *Carr, J.,* in Chambers, 22 October, 1952. From New Hanover. Error.

This was a suit to enjoin defendants from interfering with plaintiff's making physical connection of a proposed spur with defendant Bridge Company's main line track, over which the plaintiff and the defendant Atlantic Coast Line Railroad Company under agreement operate trains.

The suit was instituted and complaint filed 10 October, 1952. Based upon the complaint an order to show cause was issued and hearing thereon had 22 October, 1952, at which time judgment was rendered restraining the defendants in accord with the prayer in the complaint. The defendant Atlantic Coast Line Railroad Company appealed.

For the sake of brevity the Seaboard Air Line Railroad Company will be referred to herein as the Seaboard, the Atlantic Coast Line Railroad Company as the Coast Line, and the Wilmington Railway Bridge Company as the Bridge Company.

The material facts as set forth in the complaint are these:

The Bridge Company, a corporation created by the Constitutional Convention of 1866, holds the legal title to but does not operate the railroad tracks and bridges extending from Navassa on the west bank of Cape Fear River to Hilton on the east bank of Northeast Cape Fear River, including the bridges over the rivers, and also including spur tracks from the main line along the west bank of Northeast Cape Fear River known as Almont Spur. The distance from Navassa to Hilton is approximately two and one-half miles. The entire capital stock of the Bridge Company, $40,000, is owned one-half by the Seaboard and one-half by the Coast Line. Both the Seaboard and the Coast Line use the railroad tracks and bridges of the Bridge Company for the operation of their trams into and out of Wilmington, and by agreement account for proportionate use on wheelage basis. The Bridge Company owns no rolling stock, tools or supplies of any kind. The cost of maintenance and repairs, insurance and taxes, is apportioned between the two operating railroad companies. The bonded debt of the Bridge Company has been paid off, each railroad company paying one-half.

The Bridge Company has a board of six directors. Four of these are named by the Coast Line and two by the Seaboard. This disparity was

occasioned by the fact that the original incorporators of the Bridge Company were the Wilmington, Charlotte & Rutherfordton Railroad Company (now Seaboard), the Wilmington & Manchester Railroad Company (now Coast Line), and Wilmington & Weldon Railroad Company (Coast Line), and the charter provided that each of the three should be entitled to choose two directors. The Wilmington & Weldon, now part of Coast Line, does not operate over the Bridge Company's track, but the Bridge Company was authorized by Act of 1867 to connect with all three of its incorporators. By subsequent agreement between the Seaboard and Coast Line it was agreed that Coast Line should take over the operation and maintenance of the Bridge Company's tracks for a period of five years, and that Seaboard should have the right at the end of any 5-year period, upon notice, to take over such operation. The present 5-year period will expire in 1956.

The officers of the Bridge Company consist of a President, Vice-President, Secretary and Treasurer, Assistant Secretary, and Assistant Treasurer. There are no other employees. All these officers are named by the Coast Line except the Secretary and Treasurer, who is the Vice-President of Seaboard. The President and Vice-President of the Bridge Company are the President and Vice-President of Coast Line.

The Atlantic & Yadkin branch of Coast Line, operating between Fayetteville and Wilmington, makes connection with the main line track of the Bridge Company at about half way between the rivers at a point designated as Yadkin Junction. The Wilmington-Florence line of Coast Line and the Wilmington-Charlotte line of Seaboard, coming from the west, connect with Bridge Company's tracks at Navassa for entrance over its tracks into Wilmington. Operations over Bridge Company's tracks by the trains of the two railroads as well as that entering at Yadkin Junction are controlled by a telephone block system operated through Coast Line's offices in Wilmington. The junction of the Atlantic & Yadkin at Yadkin Junction and the branching off of the Almont spurs were by consent of Seaboard and Coast Line. As illustrating the status of these parties, in 1922 by resolution of the Bridge Company its directors and officers were directed to advise the Interstate Commerce Commission "that as the property of this company is owned by and operated as a joint facility by and for the benefit of its owner lines, the Atlantic Coast Line Railroad Company and the Seaboard Air Line Railway Company . . . and as all the operating expenses, revenues and fixed charges are taken care of and included in the accounts of the said owner and tenant companies" the provisions of the Federal Transportation Act of 1920 would not be applicable.

On 25 July, 1952, the Carolina Power & Light Company, hereinafter referred to as the Power Company, wrote the Seaboard and Coast Line

advising that it proposed to construct a large steam electric station on the east side of Cape Fear River north of the Bridge Company's main line, that it would receive large shipments of material for construction, and after completion would require 400,000 tons of coal annually, and that it desired to be served by both said railroad companies. The Power Company enclosed a plot plan showing approach by Seaboard by spur track branching from the Bridge Company's main line, and by Coast Line from its Atlantic & Yadkin branch, the plant site being equidistant from these points.

Thereupon the Seaboard advised the Coast Line and Bridge Company that it was prepared to build a line from the Power Company's plant to connect with the main line of Bridge Company's track at a point approximately half a mile east of Navassa, and proposed that the connection be made jointly with Coast Line or entirely by Seaboard. The Coast Line advised the Power Company and Seaboard that it was "advised that the Wilmington Railway and Bridge Company would not approve an application of Seaboard (or Coast Line either) to construct such connection with that trackage."

Plaintiff alleges that in an agreement between Seaboard and Coast Line in 1924 it was provided that the car count should apply to each car "running between Navassa and Yadkin and intermediate points," and that the proposed branch out to serve the Power Company would be from such an intermediate point; that there are no operating difficulties in the construction and use of the proposed connection, and the telephone block system would not be interfered with to the disadvantage of Coast Line or the Bridge Company.

Plaintiff alleges that in consequence of the refusal of defendant to permit the construction of an outlet to enable Seaboard to serve the Power Company the Coast Line would have a monopoly of the large freight movement to the Power Company, and would effectively prevent Seaboard from having a share therein as desired by the Power Company.

The plaintiff alleges that as result of the ownership by Seaboard and Coast Line of the entire capital stock of the Bridge Company, and the joint operation of its property by these companies, the Bridge Company as holder of the legal title for the benefit of the operating companies is an inactive trustee, and that Coast Line operating the line for the benefit of both occupies the position of an active trustee charged with fiduciary obligation which should prevent it from deriving benefit from its position.

The allegations of the complaint were supported by several affidavits and a number of exhibits, and the defendant Coast Line filed the affidavit of its General Manager, in which it was pointed out that due to the limited time and the length of the complaint and exhibits and the fact that the books and records of the Bridge Company were in possession of

the plaintiff, the defendant Coast Line had had insufficient time to gather all the evidence and exhibits which it will be necessary to present, or to prepare a detailed answer to the complaint; that the Bridge Company was and is a duly incorporated and organized corporation, controlled by its duly elected board of directors, holding annual meetings, and has in all respects retained its corporate existence; that the present officers were unanimously elected by the directors, two of them had been chosen by Seaboard; that Seaboard in 1951 waived its right to operate and maintain the tracks of the Bridge Company. The affiant denies that any fiduciary relationship exists between the parties, and that Seaboard and Coast Line are merely shareholders in an existing corporation; that since the present status of the parties became effective only one turnout has been constructed, in 1914, and that was by agreement of both Seaboard and Coast Line, and that for approximately 40 years the status has remained unchanged; that the Coast Line prefers to serve the power plant from its own track and does not consent to the proposed breakout from the main line of the Bridge Company; that if plaintiff be permitted to construct the turnout as prayed the Coast Line would be compelled to supervise by its employees all trains operated by Seaboard over Seaboard's spur track. This affiant also called attention to the arbitration clause in the agreement of 1909, and to the fact that Seaboard has not followed that procedure.

The plaintiff's prayer for relief set out in the complaint is that the defendant be enjoined "from interfering with the construction by the Seaboard of the turnout in the main line of the Bridge Company at, or approximately at, the point indicated," or from proceeding with arbitration under the agreement of 1909; and that an order be entered requiring the Coast Line to permit the necessary telephone connection and the use and operation thereof by the Seaboard in the operation by Seaboard of service to the power plant; and that pending the final determination of this suit the court make and issue forthwith a temporary restraining and mandatory order for these purposes.

After considering the complaint, affidavits and exhibits the court entered order that pending the final determination of the action the defendants and their agents and servants be restrained and enjoined (a) from interfering with the construction by plaintiff of the turnout in main line of the Bridge Company at the point indicated, (b) from interfering with the installation by plaintiff of a telephone at that point connected to the block system now maintained, (c) from interfering with the operation by plaintiff over the trackage of the Bridge Company to reach and use the turnout described, and (d) from interfering with the maintenance by plaintiff of said turnout on the right of way of the Bridge Company. It was further ordered that defendants permit the plaintiff to operate

over the trackage of the Bridge Company in order to reach, construct, use and maintain the said turnout and trackage constructed by plaintiff to connect therewith.

By further provision in the order the Coast Line was given option, pending the action or further order of the court, to use the turnout and track to reach and serve the Power Company, and in the event it be finally determined in this action that plaintiff is entitled to construct and operate the turnout and track to reach and serve the power plant it was ordered that Coast Line have option to purchase one-half interest in said turnout and track.

It was stated in the briefs that there was a stipulation between Seaboard and Coast Line "that the Bridge Company need not file any pleadings herein, and that no advantage would be taken of the fact that it did not."

From the foregoing order the defendant Atlantic Coast Line Railroad Company appealed.

*James B. McDonough, Jr., and Varser, McIntyre & Henry for plaintiff, appellee.*

*M. V. Barnhill, Jr., and F. S. Spruill for defendant, appellant.*

DEVIN, C. J.   When considered alone the facts set forth in the plaintiff's complaint might be regarded as sufficient to invoke the aid of equity to prevent injustice and to forestall advantage being taken by one of two equal owners in the operation of the essential railroad facilities of the defendant Bridge Company, but as equity follows the law we think the final determination of the matters complained of should abide the plenary presentation of both sides of the controverted questions rather than that the court should attempt to decide the issues by a ruling on a preliminary injunction. The time for answering has not expired and neither defendant has answered.

In the field of equity jurisprudence one of the functions of the court is to interpose its power to prevent undue advantage being taken during litigation, and to maintain the *status quo* until all the essential facts can be properly determined and final judgment rendered.   Hence we think the judgment of the court below in some respects goes beyond the scope of equitable jurisdiction and in effect tends to alter the position of the parties in relation to the litigation before all the pleadings have been filed.

Whether the plaintiff shall be permitted over the objection of the defendants to make physical connection with the Bridge Company's track and right of way in order to reach its spur track leading to the power plant is the ultimate question to be determined.   The defendants

challenge the power of the court to issue a mandatory injunction which would determine the matter at this stage of the litigation.

The judgment appealed from is in the form of a restraining order or prohibitory injunction, but its effect is in some respects mandatory in that it requires the defendants to permit the plaintiff to make physical connection with the Bridge Company's tracks. The order restrains the defendants (1) from interfering with the construction by plaintiff of the turnout from the Bridge Company's main line at the point indicated; (2) from interfering with plaintiff's use of the telephone block system; (3) from interfering with plaintiff's use of the Bridge Company's tracks and right of way to reach and use the turnout, and defendants are required forthwith to permit the plaintiff to operate over the trackage of the Bridge Company in order to reach, construct, use and maintain the said turnout and the trackage constructed by plaintiff to connect therewith.

A temporary restraining order based on the verified allegations of the complaint may be issued at the time of the institution of a suit for the purpose of preventing the commission or continuance of some act which during the litigation would produce injury to the plaintiff or tend to render judgment in his favor ineffectual. G.S. 1-485. It is an ancillary remedy afforded by the courts of equity and authorized by statute for the purpose of preserving the *status quo* pending the action. *Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; *Board of Trade v. Tobacco Co.,* 235 N.C. 737, 71 S.E. 2d 21; *Arey v. Lemons,* 232 N.C. 531, 61 S.E. 2d 596; *Jackson v. Jernigan,* 216 N.C. 401, 5 S.E. 2d 143; *Cobb v. Clegg,* 137 N.C. 153, 49 S.E. 80. It will issue to prevent an injury being committed or seriously threatened. *Wilcher v. Sharpe,* 236 N.C. 308, 72 S.E. 2d 662. In addition, a mandatory injunction may be issued to restore the status wrongfully disturbed. *Keys v. Alligood,* 178 N.C. 16, 100 S.E. 113; *Telephone Co. v. Telephone Co.,* 159 N.C. 9, 74 S.E. 636. In the last case cited preliminary injunction issued requiring restoration of a severed telephone connection. "It (a court of equity) may, by its mandate, compel the undoing of those acts that have been illegally done, as well as it may, by its prohibitive powers, restrain the doing of illegal acts." 28 A.J. 211. The court may compel the restoration to the plaintiff of that which was wrongfully taken from him. *Lovett v. Gas Co.,* 65 W. Va. 739 (748). A mandatory injunction based on sufficient allegations of wrongful invasion of an apparent right may be issued to restore the original situation. Joyce on Injunctions, sec. 102. But a preliminary mandatory injunction on *ex parte* application should not be granted, except in case of apparent necessity for the purpose of restoring the *status quo* pending the litigation. 43 C.J.S. 412; *Warner Bros. Pictures v. Gittone,* 110 F. (2) 292; *Town of Leesville v. Kapotsky,* 168 La. 342.

In *Woolen Mills v. Land Co.,* 183 N.C. 511, 112 S.E. 24, the plaintiff's right of way into its premises was obstructed. The issuance of a preliminary mandatory injunction was affirmed. From the opinion' of *Justice Adams,* written for the Court in that case, we quote: "When it appears with reasonable certainty that the complainant is entitled to relief, the court will ordinarily issue the preliminary mandatory injunction for the protection of easements and proprietary rights. In such case it is not necessary to await the final hearing. If the asserted right is clear and its violation palpable, and the complainant has not slept on his rights, the writ will generally be issued without exclusive regard to the final determination of the merits, and the defendant compelled to undo what he has done." *Elder v. Barnes,* 219 N.C. 411, 14 S.E. 2d 249; *Davis v. Alexander,* 202 N.C. 130 (136), 162 S.E. 372; *Keys v. Alligood,* 178 N.C. 16, 100 S.E. 113. "As a rule such an order will not be made as a preliminary injunction, except where the injury is immediate, pressing, irreparable, and clearly established. . . . As a final decree in the case it would be issued as a writ to compel compliance in the nature of execution." McIntosh, sec. 851; *Clinard v. Lambeth,* 234 N.C. 410, 67 S.E. 2d 452. In *Bank v. Bank,* 194 N.C. 720, 140 S.E. 705, a mandatory injunction to carry into effect the final judgment on the merits was affirmed.

"The grant of a preliminary mandatory injunction is, of course, within the prerogative jurisdiction of courts of equity. The injunction is generally framed so as to restrain the defendant from permitting his previous act to operate, or to restore conditions that existed before the wrong complained of was committed." *Anderson v. Waynesville,* 203 N.C. 37 (46), 164 S.E. 583. Such preliminary injunctions are issued to preserve the *status quo* until upon final hearing the court may grant full relief, and are usually issued in cases where the defendant has proceeded knowingly in breach of contract or in willful disregard of an order of court. *Anderson v. Waynesville, supra; Keys v. Alligood, supra.*

The position of the plaintiff Seaboard is that under the facts alleged the Bridge Company is an inactive or passive trustee holding the legal title to the property for the joint benefit of the Seaboard and the Coast Line, and that, pursuant to agreement between the two, the Coast Line maintains and controls the property and operations over it for the benefit of each, with result that in law and equity a fiduciary relationship is imposed upon the Coast Line with respect to its co-owner and joint beneficiary. The plaintiff maintains that the Coast Line becomes the active trustee and as such should not be permitted to derive pecuniary benefit from its position, and should not be permitted to exclude the Seaboard from an opportunity to share in the profitable use of the jointly owned facilities. And further, it is contended that the Bridge Company as

holder of legal title to the property in trust should be required to permit the equal use of its facilities by both beneficiaries. In support of this view the plaintiff cites *Chicago N. & St. P. R. Co. v. Des Moines U. S. Co.,* 254 U.S. 196, and *Chicago N. & St. P. R. Co. v. Minneapolis C. & C. Asso.,* 247 U.S. 490.

If it be conceded, *arguendo,* that the circumstances here when fully developed may be such as to show a fiduciary relationship between the parties and to impose upon the defendants an obligation which would require consent to a reasonable request by one beneficiary with respect to the use of jointly controlled property, yet that question cannot properly be determined until all the parties have had opportunity to be heard.

It does not appear from the complaint that the defendants have committed any wrongful act injurious to the plaintiff's rights or property such as would justify the exercise of the power of a court of equity to remedy by mandatory injunction, or to require the restoration of a status formerly existing.

The gravamen of the plaintiff's complaint is that the defendants have refused to permit the plaintiff to make physical connection with the tracks of the Bridge Company so as to enable the plaintiff to use a spur track therefrom to serve a shipper. The position of the defendants is passive. They have merely refused to comply with the plaintiff's request. Apparently the action is not to restore what has been unlawfully changed, but to crate a new condition not theretofore existing; not to prevent a wrong but to obtain opportunity to exercise a right; not to prevent a disruption of existing service, but to create a new service.

Hence we think the order of the court below went beyond the scope of a temporary restraining order and in effect required the defendants to permit the Seaboard to enter upon the right of way and tracks of the Bridge Company for the purpose of constructing a turnout. This would determine by an interlocutory order the ultimate relief sought in this action in accordance with the prayer in plaintiff's complaint. *Moss Industries, Inc., v. Irving Metals Co., Inc.,* 140 N. J. Eq. 484; *Board of Trade v. Tobacco Co., supra.*

Reference was made in the complaint to a provision in the 1909 agreement between the operating railroad companies that questions and disputes between the parties should be submitted to arbitration, but as no request for arbitration had been filed the matter was not considered by the court below, and is not before us now.

It was stated in the briefs that it had been informally stipulated that the Bridge Company need not file any pleading in this case, but the Bridge Company is the legal owner of the property involved, and as such is a necessary party, and we think should answer.

For the reasons hereinbefore set out we conclude that the mandatory provisions of the restraining order were improvidently entered and the cause is remanded for trial on the issues raised by the pleadings.

Error.