FRANK ROBERTS, Plaintiff-Appellant v. MADISON COUNTY REALTORS ASSOCIA-
TION, INC., JEANNE T. HOFFMAN, CATHERINE DICKINSON, and DIANA
SCHOMMER, Defendants-Appellees

No. COA94-1217

(Filed 2 January 1996)

## 1. Corporations § 201 (NCI4th)— merger of realty associations—affidavits opposing defendants' motion for summary judgment

Summary judgment for defendants was not appropriate (but was moot) in an action contesting the merger of two realty associations where plaintiff presented affidavits showing that plaintiff and the other affiants had not received the final Articles of Merger or summary of the final Articles of Merger ten days in advance of the meeting at which the Plan was approved, as required by N.C.G.S. § 55A-40(a)(1) and § 55A-31; that defendants failed to follow the applicable bylaws; and that plaintiff was not allowed to share material information which would have negated one of the primary reasons for considering a merger, in violation of the bylaws. With the exception of one paragraph, all of the affidavits are in accordance with N.C.G.S. § 1A-1, Rule 56(e) in that all of the affiants were members of the defendant Association, were privy to events transpiring during the merger process, and made their statements based on their knowledge of events as members of defendant Association. That their knowledge was gathered from business records or communications of party-opponents is not fatal to the averments of the affidavits.

**Am Jur 2d, Corporations §§ 2620, 2623; Summary Judgment § 18.**

## 2. Injunctions § 7 (NCI4th)— merger of realty associations— merger complete—appeal moot

A claim that summary judgment was improperly granted in an action arising from the merger of two realty associations was moot where plaintiff filed a complaint seeking a temporary restraining order, preliminary injunction, and permanent injunction to enjoin the proposed merger; temporary restraining orders were granted; the second temporary restraining order was dis-

solved and the motion for a preliminary injunction was denied after a hearing; the articles of merger were filed immediately afterwards; plaintiff then filed a motion to amend his complaint to add as a defendant the Asheville Board of Realtors, into which plaintiff's board was merging; that motion was granted; defendants thereafter filed a motion for summary judgment; and that motion was granted. A court cannot issue a mandatory injunction to prevent that which has already been consummated. It would work an injustice to now mandate that the merged entity be dissolved and ask parties who were not involved in the action to relinquish their responsibilities to the new organization. There would be a different result had plaintiff appealed the dissolution of the TRO and the denial of the motion for a Preliminary Injunction and/or sought an order to stay the trial court's judgment, dissolving the TRO, or a writ of supersedeas to the Court of Appeals.

**Am Jur 2d, Injunctions § 355.**

Judge WYNN dissenting.

Appeal by plaintiff from Order entered 12 July 1994 by Judge Claude Smith in Madison County District Court. Heard in the Court of Appeals 19 October 1995.

*Manning, Fulton & Skinner, P.A., by Cary E. Close, for plaintiff-appellant.*

*Moore & Van Allen, PLLC, by George V. Hanna, III and Mary Elizabeth Erwin, for defendants-appellees.*

JOHNSON, Judge.

This case arises from a dispute between plaintiff Frank Roberts and several members of defendant Madison County Realtors Association, Inc. (hereinafter "defendant Association") regarding the validity of a merger of defendant Association with the Asheville Board of Realtors (hereinafter "Asheville Board") pursuant to Chapter 55A of the North Carolina General Statutes (hereinafter "The Nonprofit Corporation Act").

Plaintiff, who had been a member of defendant Association for approximately ten (10) years, was appointed to a special committee charged with the negotiation of the proposed merger of defendant

ROBERTS v. MADISON COUNTY REALTORS ASSN.

[121 N.C. App. 233 (1996)]

Association with the Asheville Board. Before the terms of the merger were finalized, defendant Diana Schommer, at a 30 March 1993 membership meeting, made a motion for members to vote on the proposed merger. Edward Krause, attorney for defendant Association, intervened, informing the membership that the statutory prerequisites to an official merger vote had not been satisfied and, therefore, a vote could not be taken at that time. Defendant Schommer then amended her motion to call for a tentative vote to show the "sense of the membership." This vote resulted in a count of six (6) members in favor and five (5) members opposed to the terms of the proposed merger.

Thereafter, on 14 May 1993, defendant Jeanne Hoffman, defendant Association's president, and defendant Catherine Dickinson, defendant Association's secretary, submitted an application for the merger of defendant Association and the Asheville Board, which would be voted on at a board meeting of the North Carolina Association of Realtors, Inc. (hereinafter "North Carolina Board of Realtors") on 4 June 1993. As a part of the application, defendants Hoffman and Dickinson were required to submit a copy of the minutes from the general membership meeting of defendant Association showing *official* approval of the proposed merger. The minutes of the 30 March 1993 membership meeting submitted by defendants Hoffman and Dickinson, however, reflected only the tentative vote, taken to show the "sense of the membership." Despite this defect in the application, the merger was approved by the Board of Directors of the North Carolina Board of Realtors on 4 June 1993 and by the Board of Directors of the National Association of Realtors on 15 November 1993.

On 8 November 1993, the Board of Directors of defendant Association approved the Plan of Merger of defendant Association and the Asheville Board. Defendant Association's Board of Director's resolution approving the Plan of Merger directed that the Plan of Merger be submitted to a vote at a meeting of the members of defendant Association. Subsequently, defendant Hoffman called for an official vote of the membership on the merger. Twenty-five (25) members of defendant Association were represented in person or by proxy at this 23 November 1993 meeting. The Plan of Merger was approved by an eighteen (18) member majority of defendant Association.

Plaintiff notes that, contrary to the requirements delineated in North Carolina General Statutes sections 55A-40(a)(1) and 55A-31, several members of defendant Association, including himself, had not

received a copy of the Plan of Merger or summary of the Plan of Merger ten days in advance of the meeting. Additionally, plaintiff protests that, contrary to meeting protocol, he was not allowed to convey important information, that he had recently obtained regard-ing the National Realtor's new "Board of Choice" policy, to defendant Association's membership. This new policy changed prior policy and, for the first time, allowed those members of defendant Association who wished to transfer their membership to the Asheville Board, to do so, while, at the same time, allowing those members who wished to remain a part of defendant Association, to do so. This policy change had not been shared with members of defendant Association at any time during discussion in regards to the proposed merger, despite the fact that its implementation negated one of the primary reasons for considering a merger of defendant Association with the Asheville Board.

Frustrated by defendants' failure to comply with statutory guide-lines and defendant Association's own bylaws, plaintiff filed a *pro se* Complaint seeking a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction to enjoin the proposed merger. Plaintiff was granted an ex parte Temporary Restraining Order by Judge Raymond H. Lacey on 29 December 1993, preventing defend-ants from consummating the merger with the Asheville Board. Defendants filed an Answer and Counterclaim and thereafter, plaintiff obtained a second ex parte Temporary Restraining Order from Judge Claude Smith on 25 March 1994, enjoining the consummation of the merger.

At a hearing on plaintiff's second Temporary Restraining Order and Motion for Preliminary Injunction on 4 April 1994, Judge Robert H. Lacy found that plaintiff failed to show a reasonable apprehension of irreparable loss, injury, or harm. Judge Lacy, therefore, ordered the Temporary Restraining Order dissolved and denied plaintiff's Motion for Preliminary Injunction. Immediately thereafter, defendants and the Asheville Board filed Articles of Merger of defendant Association into the Asheville Board. Plaintiff then filed a Motion to Amend his Complaint to add the Asheville Board as a defendant. This Motion was subsequently granted. Thereafter, on 31 May 1994, defendants filed a Motion for Summary Judgment. Following a hearing on defendants' motion, the trial court concluded that, as a matter of law, there was no genuine issue of material fact in dispute as to the issue of defendants' liability under the claims set forth in plaintiff's Complaint, and therefore, defendants were entitled to Summary

Judgment as a matter of law pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. The court ordered Judgment in favor of defendants and plaintiff appeals.

**[1]** Plaintiff assigns as error the trial court's decision to grant defendants' Motion for Summary Judgment, arguing that the court had before it competent evidence showing the existence of genuine issues of material fact and that the case was not moot. Plaintiff argues that the trial court should have denied defendants' Motion for Summary Judgment and proceeded to trial for plaintiff's Motion for a Permanent Injunction. We cannot agree.

Summary judgment is a mechanism designed to eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed. *Hall v. Post*, 85 N.C. App. 610, 355 S.E.2d 819 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988). However, because it is such a drastic remedy, summary judgment is to be utilized with caution and only when the movant is clearly entitled thereto. *Houck v. Overcash*, 282 N.C. 623, 193 S.E.2d 905 (1973). In making its decision on such a motion, the trial court should carefully examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. *Taylor v. Ashburn*, 112 N.C. App. 604, 436 S.E.2d 276 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). It is the moving party who bears the burden of showing that summary judgment is appropriate. *Id.* A moving party is entitled to summary judgment if it can establish that no claim for relief exists or that the claimant cannot overcome an affirmative defense or legal bar to the claim. N.C.R. Civ. P. 56(c); *Taylor v. Ashburn*, 112 N.C. App. 604, 436 S.E.2d 276; *Wilder v. Hobson*, 101 N.C. App. 199, 398 S.E.2d 625 (1990).

On appeal, a trial court's grant of summary judgment is fully reviewable. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 343 S.E.2d 188, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). Appellate review of a trial court's grant of summary judgment addresses the trial court's conclusions as to whether, viewing the evidence in the light most favorable to the non-moving party, (1) there is no genuine issue of material fact, and (2) the moving party was entitled to judgment as a matter of law. *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987) (*citing* N.C.R. Civ. P. 56(c); *Vassey v. Burch*, 301 N.C. 68, 269 S.E.2d 137 (1980)). If the Appellate Court determines that the trial court's conclusions as to these two questions

of law were correct, then summary judgment was properly granted. *Id.*

A provision in a corporation's bylaws is a contract between that corporation and its shareholders and among shareholders. *See Ellis v. Institution*, 68 N.C. 423 (1873). Additionally, corporate officers, possessing superior knowledge, may not mislead any shareholders/members by use of corporate information to which the latter is not privy. Security Exchange Act of 1934 §§ 10(b), 32, 15 U.S.C.S. §§ 78j(b), 78ff (1983).

In the instant case, defendant Association is a corporation under the auspices of North Carolina's Nonprofit Corporation Act. *See* North Carolina Nonprofit Corporation Act, ch. 55A (1990 & Cum. Supp. 1995). As such, defendant Association was bound to act within the provisos of its own bylaws. Failure to do so was a breach of contract with its shareholders/members—in this case, plaintiff. Further, defendant Board members, as corporate officers and fiduciaries, were bound to disclose any material information known to them, but unknown to the general membership, that may have affected defendant members' vote on the merger with the Asheville Board. *See* Security Exchange Act of 1934 §§ 10(b), 32, 15 U.S.C.S. §§ 78j(b), 78ff.

The evidence tends to show that plaintiff submitted his own and two other defendant Association members' affidavits, which alleged that defendants failed to comply with provisions of North Carolina General Statutes section 55A-40 (now section 55A-11-03)—plaintiff and the other affiants had not received the final Articles of Merger and/or summary of the final Articles of Merger ten days in advance of the 23 November 1993 meeting. Further, plaintiff's affidavit asserts that defendants failed to follow the provisions of the National Association of Realtors' and defendant's own bylaws, when defendant Association failed to "submit minutes from a general membership meeting of the Board which included the official action taken in approving the merger." Moreover, plaintiff alleged that he was not allowed to share material information regarding the "Board of Choice" policy that had been adopted by the National Association of Realtors, in derogation of defendant Association's bylaws. The two other affiants alleged that they were not apprised of this information that would have negated one of the primary reasons for considering a merger with the Asheville Board. These two affiants also noted that plaintiff was prohibited from disclosing information about the change

ROBERTS v. MADISON COUNTY REALTORS ASSN.

[121 N.C. App. 233 (1996)]

in the "Board of Choice" policy, in derogation of defendant Association's own bylaws.

Defendants argue, however, that the affidavits offered by plaintiff in opposition to defendants' Motion for Summary Judgment contained incompetent evidence in violation of Rule 56(e) of the North Carolina Rules of Civil Procedure. Rule 56(e) mandates that affidavits opposing a motion for summary judgment be made on personal knowledge, set forth facts that would be admissible into evidence, and show that the affiant is competent to testify as to the matters stated therein. N.C.R. Civ. P. 56(e); *White v. Hunsinger*, 88 N.C. App. 382, 363 S.E.2d 203 (1988).

With the exception of paragraph 12 of plaintiff's affidavit, all of the affidavits submitted by plaintiff in opposition to defendants' Motion for Summary Judgment are in accordance with the requirements of Rule 56(e). All of the affiants were members of defendant Association, and were privy to events transpiring during the merger process involving defendant Association and the Asheville Board. They made statements in their affidavits, based on this knowledge of these events, as members of defendant Association. That the affiants' knowledge was gathered from business records or communications of party-opponents is not fatal to the averments of the affidavits submitted by plaintiff in opposition to defendants' Motion for Summary Judgment. *See* N.C.R. Evid. 801(d)(C)(D), 803(6).

[2] Plaintiff's and the two other affidavits presented at the hearing on defendants' Motion for Summary Judgment certainly present some evidence which tends to show that there were questionable events which occurred during the merger of defendant Association with the Asheville Board. Defendants argue, however, that they were entitled to summary judgment as a matter of law, because plaintiff's claim is now moot. While we are mindful of defendants' rather transparent circumvention of procedural and statutory protections, set in place to guard against the very thing that has occurred in instant case, regrettably, we must agree with defendants' contention that plaintiff's claim is now moot.

Inasmuch as the merger had occurred at the time of the 8 June 1994 hearing before Judge Smith, in the light most favorable to plaintiff, there was no genuine issue of material fact and defendants were indeed entitled to Summary Judgment as a matter of law. Although we do not condone the allegedly wrongful activities of defendants, our Supreme Court has long held that a court cannot issue a mandatory

injunction to prevent that which has already been consummated. *Nicholson v. Education Assistance Authority*, 275 N.C. 439, 453-54, 168 S.E.2d 401, 410 (1969); *Fulton v. Morganton*, 260 N.C. 345, 347, 132 S.E.2d 687, 688 (1963); *see also Ratcliff v. Rodman*, 258 N.C. 60, 127 S.E.2d 788 (1962) (denial of plaintiff's writ of mandamus and dismissal of appeal where primary election had been held at the time of the hearing of the appeal); *Jackson v. Jernigan*, 216 N.C. 401, 5 S.E.2d 143 (1939) (denial of injunctive relief to prevent damage by trespass when it appeared that the damage had already been done). In *Nicholson,* the plaintiff sought injunctive relief to prevent alleged "unlawful" activities by the defendant, State Education Assistance Authority, which included the spending of funds. The Supreme Court held that the Court could not issue a mandatory injunction to enjoin the spending, after the funds were spent, and could not require nonparties to return funds that they had already received. *Nicholson*, 275 N.C. 439, 168 S.E.2d 401. Similarly, in *Fulton,* the Supreme Court held that a mandatory injunction could not be issued to prevent the defendants from holding an election, which had already been held. *Fulton*, 260 N.C. 345, 132 S.E.2d 687.

Inescapably, this Court cannot enter a mandatory injunction to dissolve the merger between defendant Association and the Asheville Board. After consummation of the merger, members of defendant Association became members of the merged entity. They have paid dues, joined new committees, and started new projects as members of this merged entity. It would work an injustice to now mandate that this merged entity be dissolved and ask parties, who were not involved in this action, to relinquish their responsibilities to the new organization.

Had plaintiff appealed Judge Lacy's dissolution of the Temporary Restraining Order and denial of the Motion for Preliminary Injunction and/or sought an order to stay the trial court's Judgment, dissolving the Temporary Restraining Order, or a writ of supersedeas to this court, we would have a far different result. *See* N.C.R. App. P. 3, 23(a)(1), 23(e). In balancing the equities, on these facts, however, we must affirm the trial court.

Affirmed.

Judge EAGLES concurs.

Judge WYNN dissents.

ROBERTS v. MADISON COUNTY REALTORS ASSN.

[121 N.C. App. 233 (1996)]

Judge WYNN dissenting.

The majority contends that the trial court's grant of summary judgment in favor of defendants was proper because plaintiff's claim is now moot. I respectfully disagree, and therefore dissent.

The majority cites *Nicholson v. State Educ. Assist. Auth.*, 275 N.C. 439, 168 S.E.2d 401 (1969), and *Fulton v. City of Morganton*, 260 N.C. 345, 132 S.E.2d 687 (1963), for the proposition that a court may not issue a mandatory injunction to undo what has already been done. However, there is a contrary line of cases. In *R.R. v. R.R.*, 237 N.C. 88, 74 S.E.2d 430 (1953), our Supreme Court held:

> [A court of equity] may, by its mandate, compel the undoing of those acts that have been illegally done, as well as it may, by its prohibitive powers, restrain the doing of illegal acts. The court may compel the restoration to the plaintiff of that which was wrongfully taken from him. A mandatory injunction based on sufficient allegations of wrongful invasion of an apparent right may be issued to restore the original situation.

*Id.* at 94, 74 S.E.2d at 434 (citations omitted). *See also Crabtree v. Jones*, 112 N.C. App. 530, 435 S.E.2d 823 (1993), *disc. review denied*, 335 N.C. 769, 442 S.E.2d 514 (1994); *Town of Pine Knoll Shores v. Evans*, 331 N.C. 361, 416 S.E.2d 4 (1992); *Wrightsville Winds Townhouses Homeowners' Ass'n. v. Miller*, 100 N.C. App. 531, 397 S.E.2d 345 (1990), *disc. review denied*, 328 N.C. 275, 400 S.E.2d 463 (1991).

Contrary to the majority's assertion, plaintiff's claim is not moot simply because the merger has occurred. As the majority opinion implicitly recognizes, a court may, in an appropriate case, issue a mandatory injunction undoing acts which were illegally done.

In the instant case, there are issues of material fact regarding whether the defendants caused the merger outside of the statutory authority to do so. Accordingly, I would reverse the grant of summary judgment and remand for a trial to determine whether, in fact, the merger occurred outside of the authority to merge nonprofit corporations granted by N.C. Gen. Stat. § § 55A-40(a)(1) (1990) (recodified N.C. Gen. Stat. § 55A-11-03(b) (1993)) and 55A-31 (1990) (recodified N.C. Gen. Stat. § 55A-7-05 (1993)), and if so, whether justice demands that the merger be undone. *See Crabtree v. Jones*, 112 N.C. App. at 534, 435 S.E.2d at 825 (holding that when summary judgment was improperly granted against a plaintiff seeking a mandatory injunc-

tion, this Court should remand for a determination whether the balancing of the equities demands the issuance of the injunction rather than deciding for ourselves).

Moreover, the record indicates that the subject merger had not occurred at the time of the 4 April 1994 hearing on the preliminary injunction. According to the defendants' motion for summary judgment, the Articles of Merger were filed with the Secretary of State on 29 April 1994, some 3 weeks after the 4 April 1994 hearing. Hence, the merger was completed after the denial of the preliminary injunction but before the 8 June 1994 hearing on defendants' motion for summary judgment which is the subject of the instant appeal.

By determining that a merger completed after the denial of a preliminary injunction, but before a hearing on the permanent injunction results in the plaintiff's claim being moot, the majority in essence renders the preliminary injunction determination to be the final decision in cases like this one. A preliminary injunction is only intended to preserve the *status quo* pending trial on the merits. *Kaplan v. Prolife Action League of Greensboro*, 111 N.C. App. 1, 14, 431 S.E.2d 828, 834 (1993), *motion to dismiss allowed and disc. review denied*, 335 N.C. 175, 436 S.E.2d 379 (1993), *cert. denied*, 114 S.Ct. 2783, 129 L. Ed. 2d 894 (1994). The preliminary injunction determination should not be the end of the case.

Finally, the majority opinion changes the longstanding rule discouraging appeals from the denial of a preliminary injunction. As a general rule, the grant or denial of a preliminary injunction is interlocutory, and no appeal lies unless a substantial right is affected. *N.C. Elec. Membership Corp. v. N.C. Dept. of Econ. & Comm. Development*, 108 N.C. App. 711, 716, 425 S.E.2d 440, 443. However, in the instant case, the majority opinion requires appeal from the denial of a preliminary injunction, lest the subject matter be consummated rendering the action moot because the act cannot be undone. Doubtlessly, the majority opinion will encourage interlocutory appeals from the denial of preliminary injunctive relief.